BERNARD SUTER, HISB No. 3801
ben.suter@kyl.com
Keesal, Young & Logan, LLP
A Hawai'i Limited Liability Law Partnership
450 Pacific Avenue
San Francisco, California  94133
Telephone:   (415) 398-6000
Facsimile:    (415) 981-0136

Attorneys for Plaintiff
JPMorgan Chase Bank, N.A.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| JPMorgan Chase Bank, N.A.,<br><br>    Plaintiff,<br><br>  v.<br><br>Stacy Moniz,<br><br>    Defendant. | CIVIL NO.<br>(Contract)<br><br>**COMPLAINT FOR BREACH OF CONTRACT (PROMISSORY NOTE)** |

//
//
//
//
//
//
//
//
//

NOTICE IS HEREBY GIVEN THAT THIS ACTION IS AN ATTEMPT TO COLLECT A DEBT AND THAT ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

Plaintiff JPMORGAN CHASE BANK, N.A. ("Chase") hereby alleges as follows:

## PARTIES

1. Chase is a national banking association. Its headquarters is located at 1111 Polaris Parkway, Columbus, Ohio 43240.

2. Defendant STACY MONIZ ("Mr. Moniz") is an individual. Mr. Moniz is a citizen of the State of Hawai'i and resides in Kaneohe, Hawai'i.

## JURISDICTION

3. This Court has original jurisdiction over this case based on diversity. District courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states. 28 U.S.C. § 1332. Here, Chase seeks to recover a debt exceeding $75,000, and Chase and Mr. Moniz are citizens of different states (Ohio and Hawai'i, respectively).

4. This Court has personal jurisdiction over Mr. Moniz, as he lives and works in the State of Hawai'i.

## VENUE

5. This Court is the proper venue for this case, as Mr. Moniz

resides in the State of Hawai'i and a substantial part of the events giving rise to Chase's claim occurred in the State of Hawai'i.

## **GENERAL ALLEGATIONS**

6. On or around November 9, 2005, Mr. Moniz obtained a $483,000 loan ("Subject Loan") from lender PHH Mortgage Corporation ("PHH"). The Subject Loan was memorialized by an InterestFirst Adjustable Rate Note ("Subject Note"), which was executed by Mr. Moniz. The Subject Note details Mr. Moniz's repayment obligations and the consequences that may result from default. A true and correct copy of the Subject Note is attached hereto as Exhibit A.[1]

---

[1] As security for the repayment of the Subject Loan and the performance and observance of Mr. Moniz's obligations under the Subject Note, Mr. Moniz executed a Mortgage dated November 9, 2005. The Mortgage lists Mr. Moniz and Bonny Kanani Onaona Moniz as "borrowers," PHH Mortgage Corporation as the "lender," and Mortgage Electronic Registration Systems, Inc. as the nominal mortgagee. The Mortgage encumbers Mr. and Mrs. Moniz's real property, which is located at 47-563 Hua Place, Kaneohe, Hawai'i 96744.

On November 9, 2011, Mr. and Mrs. Moniz filed a lawsuit in the Circuit Court of the First Circuit of the State of Hawai'i ("State Court Lawsuit"). The State Court Lawsuit challenges the enforceability of the Mortgage, and Chase is a named defendant. The State Court Lawsuit is currently scheduled to proceed to trial in February 2016.

Chase is filing the instant case in part to preserve its rights under the Subject Note by timely filing suit on the Subject Note within the applicable statute of limitations. Chase anticipates amending this Complaint to include a Count for Judicial Foreclosure after it prevails in the State Court Lawsuit.

7. Chase (or its duly-authorized agent) currently possesses the original Subject Note. The original Subject Note bears a blank endorsement from PHH. As the bearer of the original Subject Note, Chase is entitled to enforce the contract.

8. Mr. Moniz made payments on the Subject Note for more than four years, but has not made any payments on the Subject Note since on or about March 1, 2010. Mr. Moniz is in default, as he has failed to make payments as required by the Subject Note for the past five years and nine months. Per the terms of the Subject Note, Mr. Moniz was sent written notice of his default. The written notice informed Mr. Moniz of the action necessary to cure his default and the potential consequences of failing to take such action, which included acceleration of his debt.

9. Despite the written notice, Mr. Moniz did not cure his default. Mr. Moniz's debt was accelerated, and the entire amount of Mr. Moniz's indebtedness became immediately due and payable. To date, Mr. Moniz still has not paid off his accelerated debt.

10. Mr. Moniz's indebtedness currently exceeds $650,000, and it continues to grow. The total amount due will be set forth by evidence filed with the Court.

//

# COUNT ONE
## Breach of Contract (Promissory Note)

11. Chase incorporates the allegations set forth in Paragraphs 1 through 10 above as if fully restated in this Paragraph 11.

12. Chase and Mr. Moniz entered into the Subject Note contract attached hereto as Exhibit A.

13. Chase fully performed its obligations under the Subject Note and/or its full performance was excused.

14. Mr. Moniz failed to perform his obligations under the Subject Note and his performance has not been excused.

15. Mr. Moniz's failure to perform his obligations under the Subject Note has damaged Chase and is the legal cause of damages to Chase.

16. The damage suffered by Chase as a result of Mr. Moniz's failure to perform his obligations under the Subject Note was of the nature and extent reasonably foreseeable by Mr. Moniz at the time the contract was entered into.

**PRAYER FOR RELIEF**

WHEREFORE, Chase prays as follows:

1. That the Court enter a money judgment in favor of Chase and against Mr. Moniz in an amount equal to the total amount due under the Subject Loan, including all principal, interest, advances, costs, expenses, attorneys' fees,

late fees, and other charges that have accrued.

      2.     That the Court enter a judgment in favor of Chase and against Mr. Moniz awarding Chase the reasonable attorneys' fees, costs and other expenses incurred by Chase in enforcing the Subject Note.

      3.     That the Court enter a judgment in favor of Chase and against Mr. Moniz awarding Chase such other and further legal and equitable relief as the Court may deem appropriate under the circumstances.

DATED: San Francisco, California, December 11, 2015.

          */S/ Bernard Suter*
          BERNARD SUTER
          Keesal, Young & Logan, LLP
          Attorneys for Plaintiff
          JPMorgan Chase Bank, N.A.

# EXHIBIT A

████████ 8401

████ 0398  

# InterestFirst℠ ADJUSTABLE RATE NOTE
( One-Year LIBOR Index (As Published In *The Wall Street Journal*)-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| November 9, 2005 | KANEOHE | Hawaii |
|---|---|---|
| [Date] | [City] | [State] |

47-563 HUA PLACE, KANEOHE, HI 96744
[Property Address]

## 1. BORROWER'S PROMISE TO PAY
In return for a loan that I have received, I promise to pay U.S. $ 483,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is PHH Mortgage Corp (fka Cendant Mortgage Corp)

I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST
Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will make a payment on the first day of every month, beginning on January 1st, 2006. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.
I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on December 1st, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 3000 Leadenhall Road Mount Laurel, NJ 08054

or at a different place if required by the Note Holder.
### (B) Amount of My Initial Monthly Payments
My monthly payment will be in the amount of U.S. $2364.69 before the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.
### (C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - WSJ ONE-YEAR LIBOR INDEX - Single Family - **Fannie Mae Uniform Instrument**

VMP®-170N (0210).01     Form 3530 11/01
VMP Mortgage Solutions (800)521-7291

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of December, 2015 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

### (B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding Two and Twenty-Five / Hundredths percentage points ( 2.2500%) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than 2.250%. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

### (G) Date of First Principal and Interest Payment

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first monthly payment date after the first Change Date.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund

by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of Fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.00% of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

### (B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor and waive the benefit of the homestead exemption as to the Property described in the Security Instrument (as defined below). "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, and a Pledge Agreement for Securities Account, if applicable, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)  _____ (Seal)
STACY MONIZ                        -Borrower                                    -Borrower

_____ (Seal)  _____ (Seal)
                                   -Borrower                                    -Borrower

                                            PAY TO THE ORDER OF

_____ (Seal)  WITHOUT RECOURSE                 _____ (Seal)
                                   -Borrower                                    -Borrower

                                            Deanne Roberts, Assistant Vice President
                                            PHH Mortgage Corporation

_____ (Seal)  _____ (Seal)
                                   -Borrower                                    -Borrower

[*Sign Original Only*]