FIRST CIRCUIT COURT
STATE OF HAWAII
FILED

2012 APR -9 PM 1: 1

E. TAKE
CLERK

STACY MONIZ
47-563 Hua Place
Kaneohe, Hawaii 96744
Tel.: (808) 258-7448

Plaintiff, PRO SE

GARY M. LEVITT         4433
2210 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813-3917
Telephone:  (808) 224-5545
Facsimile:  (808) 239-4475

Attorney for Plaintiff
BONNY K. MONIZ

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| STACY MONIZ and BONNY K. MONIZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> CHASE HOME FINANCE, LLC a foreign ) <br> limited liability company; PHH ) <br> MORTGAGE CORPORATION, a foreign ) <br> corporation; PHH MORTGAGE ) <br> SERVICES, a registered trade name; ) <br> MORTGAGE ELECTRONIC ) <br> REGISTRATION SYSTEMS, INC., a ) <br> foreign corporation; DESSERT VALLEY ) <br> MORTGAGE, LLC, a foreign limited ) <br> liability company; RCO HAWAII LLLC, a ) <br> Hawaii limited liability law company; ) <br> STATE OF HAWAII DEPARTMENT OF ) <br> LAND AND NATURAL RESOURCES, ) <br> BUREAU OF CONVEYANCES, DOE ) <br> DEFENDANTS 1-100 and DOE ENTITIES ) <br> 1-100 ) <br> Defendants, ) | Civil No. 11-1-2733-11 ECN <br> (Other Civil Action) <br><br> AMENDED VERIFIED COMPLAINT; <br> DEMAND FOR JURY TRIAL; <br> SUMMONS |

-1-

**EXHIBIT "A"**

<u>AMENDED VERIFIED COMPLAINT</u>

Plaintiff STACY MONIZ, Pro Se and Plaintiff BONNY K. MONIZ, by and through her counsel Gary M. Levitt, and for their Amended Verified Complaint against the above captioned Defendants, allege and aver as Follows:

**I. PARTIES**

1.      Plaintiffs STACY MONIZ (hereinafter "STACY MONIZ") and BONNY K. MONIZ (hereinafter "BONNY K. MONIZ") are residents of City of Kaneohe, State of Hawaii and are Husband and Wife.

2.      Defendant CHASE HOME FINANCE, LLC is and was at all times relevant hereto, a foreign Limited Liability Company organized in the State of Delaware, with its principle place of business in the state of Ohio (hereinafter "CHASE").  CHASE has no office or registered agent for service in the State of Hawaii.

3.      Defendant PHH Mortgage Corporation was at all times relevant hereto a foreign corporation, organized and existing under the laws of the State of New Jersey (hereinafter "PHHMC").

4.      Defendant PHH Mortgage Services is a registered trade name in the State of Hawaii under Defendant PHHMC since July 2008 (hereinafter "PHH Mortgage Services").  At all times relevant hereto, PHH Mortgage Services has held itself out as a separate entity.

5.      Defendant Mortgage Electronic Registration Systems, Inc. at all times relevant hereto is a corporation organized under the laws of the State of Delaware (hereinafter "MERS").  MERS has no office or registered agent for service in the State of Hawaii.

6.      Defendant Dessert Valley Mortgage, LLC at all times relevant hereto was a Limited Liability Company organized in the State of Utah (hereinafter "DVM").  DVM has no office or registered agent for the State of Hawaii.

7.      Defendant RCO Hawaii, LLLC at all times relevant hereto is a Limited Liability Law Company organized in the State of Hawaii (hereinafter "RCO") and upon information and belief, acted as the trustee for CHASE in the non-judicial foreclosure process.

8.      Defendant State of Hawaii Department of Land and Natural Resources, Bureau of Conveyances (hereinafter "SOH") is and was an office or department of the State of Hawaii responsible for the recordation and filing of documents including but not limited to mortgage documents related to real property located within the State of Hawaii.

9.      Plaintiffs are ignorant of the true names and capacities of Doe Defendants 1-100 and Doe Entities 1-100, and therefore sue said Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Plaintiffs' damages, as herein alleged, were proximately caused by their conduct. Plaintiffs have made good faith and diligent efforts to identify said Defendants, including interviewing individuals with knowledge of the claims herein.  Plaintiffs are informed and believe and therefore allege that at all times herein mentioned, Defendants, and each of them, were the agents, servants and employees of each of the other Defendants herein, and were acting with the permission and consent and within the course and scope of said agency and employment.

## II. VENUE AND JURISDICTION

10.     All events described herein took place in the County of Honolulu, State of Hawaii and within the jurisdiction of the Circuit Court of the First Circuit, State of Hawaii.

## III. VERIFIED FACTUAL ALLEGATIONS

11.     STACY MONIZ purchased the property located at 47-563 Hua Place, Kaneohe, Hawaii 96744 in or about August of 1988 (hereinafter "Subject Property").

12.     STACY MONIZ and BONNY K. MONIZ were married on May 29, 1994 and BONNY K. MONIZ was added to the title of the Subject Property on April 29, 1996.

13.     In or about August, 2005 STACY MONIZ had an existing 30 year mortgage in his name only, which was in good standing.  In or about October, 2005 STACY MONIZ was informed that DVM could offer him a better interest rate and was soliciting for business.

14.     STACY MONIZ was contacted by representatives of DVM and provided them with a loan application and other personal information.  BONNY K. MONIZ was not an applicant on this loan application.

15.     It was STACY MONIZ's belief that the information contained in his mortgage loan application would be used to obtain a mortgage loan to refinance his existing loan with Washington Mutual.

16.     From the outset of STACY MONIZ's communications with DVM, he informed them that the mortgage and the note was to be only in his name, and that his wife, BONNY K. MONIZ was not applying for the loan nor would she be a borrower.

17.     STACY MONIZ fully disclosed to DVM that his wife, BONNY K. MONIZ was on title with him as Tenants' by the Entirety. In this regard, STACY MONIZ specifically informed DVM that he would not accept a mortgage loan with his wife as a borrower or mortgagor.

18.     Subsequently, STACY MONIZ was informed that his loan application had been approved for a thirty-year (30), ten-year (10) interest-only ARM Mortgage.  BONNY K. MONIZ had no communication or interaction of any kind with DVM or its representatives and she did not provide any personal information.

19.     On or about November 9, 2005 STACY MONIZ executed the Mortgage Loan Documents before a duly authorized Notary of the State of Hawaii, who was also an agent of DVM and/or PHHMC.  This included the Mortgage, the Fixed Rate Rider, the Note and the Signature Name Affidavit.  BONNY K. MONIZ was not present at this meeting.

20.     Prior to executing the Mortgage Loan documents, STACY MONIZ reviewed all the Documents and he was the only person defined on the first page as the "borrower".  BONNY K. MONIZ's name did not appear anywhere on the Mortgage Loan Documents.

21.     If BONNY K. MONIZ's name had appeared on any of the Documents, especially as a "borrower", STACY MONIZ would not have signed the Mortgage Loan Documents.

22.     On or about November 9, 2005 STACY MONIZ'S signature was notarized at least twice, once on the Mortgage and once on the Signature Name Affidavit.  STACY MONIZ was also required to provide personal identification and his thumbprint and signature in the Notary's journal.

23.     The Mortgage Loan Documents provided to STACY MONIZ on November 9, 2005 for execution, listed MERS as the Mortgagee and PHHMC as the lender.  To date, Plaintiffs have never been provided with notice of any assignments to STACY MONIZ's mortgage loan.

24.     On or about November 9, 2005 during STACY MONIZ's execution of the Mortgage Loan Documents, he was informed by representatives of DVM and/or PHHMC that PHH Mortgage Services would be servicing his loan.

25.     Within a few days after November 9, 2005, STACY MONIZ received a communication from a representative of DVM and/or PHHMC stating that since his wife (BONNY K. MONIZ) was on title to the Subject Property but not a mortgagor or borrower on the Mortgage Loan Documents, the lender requested that she initial the Mortgage and the Fixed Rate Rider to verify that she was aware that her husband (STACY MONIZ) was taking out a mortgage on the Subject Property.

26.     Representatives of DVM and/or PHHMC delivered the executed and previously notarized Mortgage and Fixed Rate Rider to STACY MONIZ at the Queen Emma building in Honolulu, Hawaii.  STACY MONIZ took the documents home that evening and BONNY K. MONIZ

initialed the Mortgage and Fixed Rate Rider that same evening.  BONNY K. MONIZ only initialed the first thirteen (13) pages of the Mortgage and the first three (3) pages of the Fixed Rate Rider.  BONNY K. MONIZ did not initial the signature pages of either document because she was not required to nor did she wish to.

27.     STACY MONIZ did not find PHHMC's request unusual at the time since BONNY K. MONIZ was not mentioned in the Mortgage or Fixed Rate Rider documents, and because she was not a mortgagor or borrower on STACY MONIZ'S existing mortgage with Washington Mutual Bank.

28.     At the time BONNY K. MONIZ initialed the Mortgage and Fixed Rate Rider, her name did not appear anywhere on the documents, either in type or hand-written.  STACY MONIZ personally witnessed BONNY K. MONIZ initial the documents.

29.     BONNY K. MONIZ did not place her signature on the Mortgage and Fixed Rate Rider, and STACY MONIZ did not ask her to do so.  If her name had appeared as a "borrower" or "mortgagor" STACY MONIZ would not have asked BONNY K. MONIZ to initial the Mortgage Loan Documents.

30.     The next day, STACY MONIZ left the documents with BONNY K. MONIZ'S initials at the front desk of his office in the Queen Emma building, which were picked up upon information and belief by representative(s) of DVM and/or PHHMC.

31.     STACY MONIZ subsequently learned that the Mortgage and Fixed Rate Rider were recorded with the State of Hawaii Bureau of Conveyances on or about November 17, 2005.

32.     Upon information and belief, PHHMC and DVM were the only entities to receive compensation from STACY MONIZ for the subject loan.

33.     STACY MONIZ believes he began making the monthly mortgage payment to PHH Mortgage Services from on or about December 2005 or January 2006 until sometime in 2008 when he was notified that CHASE was to be his new loan servicer.  CHASE provided no other disclosures to STACY MONIZ.  Thereafter, STACY MONIZ made his monthly mortgage payments to CHASE.

34.     DVM was not licensed or registered to do business in the State of Hawaii.

35.     Neither CHASE nor PHH Mortgage Services were licensed in the State of Hawaii to do business as a mortgage loan servicer, as required by State law.

36.     PHHMC was not licensed in the State of Hawaii or exempt from licensing requirements to do business in the State of Hawaii as a mortgage lender.

37.     From on or about November 2005 until on or about August 2010, all communications, mortgage statements and notifications were directed to STACY MONIZ and did not contain any reference to BONNY K. MONIZ.

38.     In all correspondence/communications received by STACY MONIZ directly from PHH Mortgage Services and CHASE indicates that he was and is the sole Mortgagor/Borrower. BONNY K. MONIZ'S name is not referenced or mentioned as a mortgagor, borrower or any other designation in any of the correspondence.

39.     On occasion, with both PHH Mortgage Services and CHASE, STACY MONIZ asked BONNY K. MONIZ to make his monthly mortgage payment over the telephone.  When BONNY K. MONIZ initially made the calls to both PHH Mortgage Services and CHASE, they refused to speak to her.  Both loan servicers asked to speak to STACY MONIZ.  When STACY MONIZ got on the phone call the representatives of both loan servicers told him that his wife was not a party to his Mortgage and they could not discuss anything to do with the Mortgage

with BONNY K. MONIZ without his authorization.  In every instance STACY MONIZ gave his authorization for his wife to make his payments on his Mortgage over the telephone.

40.     In or about April 2010 STACY MONIZ began to experience financial hardship due to the changing economy and other business circumstances.  STACY MONIZ fell behind on his mortgage payment and contacted CHASE to inquire about a loan modification program.  He was told that he was not far enough behind on his mortgage payments to qualify for the program.

41.     STACY MONIZ made a mortgage payment in June 2010.  At that time he again contacted CHASE to inquire about a loan modification and CHASE informed STACY MONIZ that because he made a payment in June he was not far enough in arrears to qualify for the loan modification program and that he had to be ninety days (90) in default.

42.     Sometime in July 2010, STACY MONIZ again contacted CHASE and requested a loan modification packet.  CHASE agreed to send him one and to enter into loan modification negotiations.

43.     At no time during these communications did CHASE ever request or require BONNY K. MONIZ'S participation or involvement in any way in the loan modification negotiation.

44.     On or about July 16, 2010 STACY MONIZ received a Notice of Default from RCO on behalf of CHASE dated July 13, 2010.  The alleged notice was not addressed to BONNY K. MONIZ nor did she ever receive a separate Notice of Default.

45.     The July 13, 2010 correspondence from RCO was the first time that STACY MONIZ was notified that CHASE claimed to be his "creditor" to whom the debt was owed.

46.     The July 13, 2010 letter, which purported to be a Notice of Default, was deficient under applicable statutory law and the provisions of the Mortgage itself.

47.     STACY MONIZ discovered subsequent to the July 13, 2010 letter that the "Lender" prior to acceleration or sale must provide notice that specifies the following: "(a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date of the notice given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property." See p. 13, Section 22 of Mortgage.

48.     The letter of July 13, 2010 is deficient/defective because first, MERS is still the mortgagee of record.  No assignment has ever been produced by CHASE or RCO.  Second, the letter does not provide an amount to cure the default.  Third, paragraph 22 of the Mortgage states that, "The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale."  The July 13, 2010 letter does not comply with this condition.

49.     On or about August 10, 2010 STACY MONIZ timely responded in writing to RCO's July 13, 2010 Notice of Default requesting inter alia the amount to cure the alleged default, copies of his files and verification of the alleged debt.  RCO's July 13, 2010 letter stated that if STACY MONIZ requested such items, that no foreclosure would be instituted during the pendency of the request.

50.     To date, STACY MONIZ has never been officially informed by either RCO, CHASE or any other entity or person of the amount required to cure the alleged default.

51.     On or about August 17, 2010 STACY MONIZ received a loan modification package from CHASE per his earlier request.  Included with the loan modification package was a letter from CHASE stating inter alia:  that as STACY MONIZ'S loan servicer, CHASE would be handling any loan modification and CHASE would not refer the matter to foreclosure or proceed with any sale as long as STACY MONIZ was being evaluated for a loan modification.

52.     As of August 17, 2010, STACY MONIZ had yet to receive a response from RCO regarding his request of August 10, 2010.

53.     On or about August 25, 2010, PLAINTIFFS were served with a Notice of Mortgagee's Intention to Foreclose Under Power of Sale.  The document was filed stamped on August 18, 2010, eight days after STACY MONIZ'S letter of August 10, 2010 that should have stopped the foreclosure process and six days after CHASE stated it would not refer the matter to foreclosure during the loan modification evaluation.  The Notice identified CHASE as the Mortgagee, with no support for said reference.  This was the first time that STACY MONIZ was ever notified that CHASE was claiming that it was his "Mortgagee."

54.     The Notice was signed by Derrick Wong Esq. of RCO as "Attorney for Mortgagee" CHASE.  Upon information and belief, RCO was also serving in the capacity of trustee for the non-judicial foreclosure sale.

55.     The August 18, 2010 Notice of Mortgagee's Intention to Foreclose Under Power of Sale was the first time STACY MONIZ or BONNY K. MONIZ were ever notified that BONNY K. MONIZ was an alleged "mortgagor" on the loan of the Subject Property.

56.     Immediately upon receipt of the Notice of Mortgagee's Intention to Foreclose Under Power of Sale, STACY MONIZ contacted Peter Stone, Esq. of RCO and inquired how and why this was happening under the circumstances, specifically the prior representations of RCO and CHASE.  Peter Stone subsequently responded by email and stated the Notice was not supposed to happen and he would look into it.

57.     On August 31, 2010 RCO, on behalf of CHASE, filed a rescission, cancellation and withdrawal of the Notice of Mortgagee's Intention to Foreclose Under Power of Sale.  The rescission inter alia specifically stated that the mortgage reverts back to the time prior to the Notice.

58.     Interestingly, the rescission refers to a Mortgage entered into with MERS and Cendant Mortgage Corporation.  To the best of his knowledge, STACY MONIZ has never had any dealings with Cendant Mortgage Corporation regarding his present Mortgage.

59.     On or about August 25, 2010 STACY MONIZ telephoned RCO and spoke to a woman named "Alana".  Mr. Moniz inquired regarding the status of the requests contained in his August 10, 2010 letter to RCO.  Alana responded that RCO was in receipt of the letter and the file was being compiled.  STACY MONIZ then informed Alana that the Notice of Intention to Foreclose Under Power of Sale was defective because BONNY K. MONIZ was not a Mortgagor or a party to the Mortgage.  Alana responded by stating that she had accessed STACY MONIZ'S file on her computer while they were speaking and confirmed that BONNY K. MONIZ was not listed as being on the Mortgage.

60.     On or about August 26, 2010 STACY MONIZ sent Peter Stone and Derek Wong of RCO a letter via email.  That letter inter alia:  pointed out some of the various deficiencies with the Notice of Foreclosure and RCO's letter of July 13, 2010; informed Mr. Stone and Mr. Wong of the representations of CHASE regarding foreclosure not being instituted while STACY MONIZ was in loan modification discussions; and requested the amount to cure the alleged default pursuant to H.R.S. 667-5 (c) (1).  STACY MONIZ never received a response or reply to his request.

61.     On or about September 23, 2010 STACY MONIZ and BONNY K. MONIZ received a letter dated September 20, 2010 from Peter Stone of RCO.  Included with the letter was a copy of the Mortgage Loan Documents.  Despite the fact that STACY MONIZ'S loan had been serviced by CHASE since 2008, the September 20, 2010 letter identifies "PHH Mortgage" as the loan servicer.

62.     The September 20, 2010 letter further states that the servicer (PHH Mortgage) has informed RCO that they have commenced a trial modification workout with STACY MONIZ and BONNY K. MONIZ and has directed RCO "to place the foreclosure proceedings and

property sale, currently scheduled for November 22, 2010, on hold pending your efforts with the loss mitigation group". The letter goes on to state that if those efforts should fail, PHH Mortgage will likely instruct this office to resume foreclosure, and any further disputes or concerns will be resolved through your communications with the servicer.

63.     Neither STACY MONIZ and/or BONNY K. MONIZ have ever had any trial modification workout with anyone, including "PHH Mortgage" or any of the Defendants named herein. Further, STACY MONIZ has not had any communications with any PHH entity since on or about 2008.

64.     Upon receipt of the September 20, 2010 correspondence from RCO, STACY MONIZ began to review the Mortgage Loan Documents. STACY MONIZ immediately noticed that his wife, BONNY K. MONIZ, had been added as an alleged borrower on the Mortgage and Fixed Rate Rider.

65.     The Mortgage, on the first page, identified "Borrower" as STACY MONIZ, and then in different fonts and words "AND" was typed in then "BONNY KANANI ONAONA MONIZ" and then on the next line "HUSBAND AND WIFE, TENANTS BY THE ENTIRETY". This definition/description of "Borrower" was not present on November 9, 2005 when STACY MONIZ executed the Mortgage and it was duly notarized.

66.     This definition/description of "Borrower" was not present when BONNY K. MONIZ initialed the Mortgage and Fixed Rate Rider.

67.     This description of "Borrower" was not present when STACY MONIZ signed this document and had it notarized on November 9, 2005. The only borrower identified was STACY MONIZ. If the definition of borrower had included BONNY K. MONIZ, STACY MONIZ would not have signed the document nor asked his wife to subsequently initial the document.

68.     The Mortgage also listed MERS as the Mortgagee. Upon information and belief and according to public records, MERS is still the Mortgagee.

69.     After further review of the Mortgage document at page 14, STACY MONIZ noticed that his wife's name had been written in by hand on a Borrower's signature line. There also appeared a signature upon that signature line which is alleged to be that of BONNY K. MONIZ. STACY MONIZ would not have allowed BONNY K. MONIZ to sign the Mortgage document since she was not a borrower or mortgagor, nor did she ever intend to be.

70.     The Fixed Rate Rider also contains a hand-written name of BONNY KANANI ONAONA MONIZ on a Borrower's signature line. There also appeared a signature upon that signature line which is alleged to be that of BONNY K. MONIZ. STACY MONIZ would not have allowed BONNY K. MONIZ to sign the Fixed Rate Rider since she was not a borrower or mortgagor, nor did she ever intend to be.

71.     None of the hand-written entries or changes on the Mortgage document or the Fixed Rate Adjustable Rider were made by PLAINTIFFS. None of these hand-written entries were initialed by anyone, except for one on the Signature Name Affidavit that was initialed by the Notary.

72.     The alleged signatures of BONNY K. MONIZ to the Mortgage and Fixed Rate Rider appear to be different signatures and do not appear to be the signature of BONNY K. MONIZ. BONNY K. MONIZ did not sign the Mortgage or Fixed Rate Rider as a Borrower on November 9, 2005 or anytime thereafter.

73.     Upon information and belief, the Mortgage documents and Fixed Rate Rider have been changed, altered or tampered with to add BONNY K. MONIZ as a Borrower and/or Signatory to the Mortgage and Fixed Rate Rider.

74.     STACY MONIZ would not have allowed BONNY K. MONIZ to sign the Mortgage Loan Documents since she was not a borrower or mortgagor of the mortgage and was never intended to be.

75.     STACY MONIZ then reviewed the Notary page of the Mortgage.  The Notary page had been changed, altered, tampered with and/or otherwise falsified to attest that BONNY K. MONIZ was present and executed the Mortgage Loan Documents on November 9 2005.  None of the hand-written changes on the notary page were initialed by anyone.

76.     The Notary page of the Mortgage is also in violation and does not comply with State statutory law.

77.     A thorough search by the State of Hawaii Department of the Attorney General Notary Public Office confirms that the Notary Public Record Book of K. Doseo contains STACY MONIZ'S personal identification information, signature and thumb print for November 9, 2005. However, there is no other journal entry made on November 9, 2005 and no other journal entry was made on or near this date for notarization of the signature of BONNY K. MONIZ.

78.     The Mortgage Loan Documents included a "SIGNATURE/NAME AFFIDAVIT" which lists STACY MONIZ'S loan number and states in type "BORROWER STACY MONIZ".  The Signature Name/Affidavit goes on to state "THIS IS TO CERTIFY THAT MY LEGAL SIGNATURE IS AS WRITTEN AND TYPED BELOW" and then states in parenthesis "This signature must exactly match signatures on the Note and Mortgage or Deed of Trust".  Below this language STACY MONIZ'S name is typed and his signature appears on the signature line. There are no other signatures or names to match the Note and Mortgage exactly since STACY MONIZ'S name is the only signature on the document.

79.     The Signature/Name Affidavit is notarized by K. Doseo, the same Notary who appears as the Notary on the Mortgage document.  Although there were changes made to the Signature/Name Affidavit, unlike the Mortgage and Fixed Rate Rider Notary page, when the Notary made changes on the Signature/Name Affidavit, she properly initialed those changes.

except for the signature pa    . STACY MONIZ did not ask his wife to initial the signature page, as it was not necessary because she was not a signatory or party to the document.

81.     After reviewing the Mortgage Loan Documents, STACY MONIZ informed RCO on several occasions that BONNY K. MONIZ was not a party to the Mortgage.  In response, STACY MONIZ received a letter dated October 4, 2010 from Mr. Charles Prather Esq. of RCO wherein Mr. Prather referred to BONNY K. MONIZ as an "Endorser" of the Mortgage. The term "Endorser" is not defined in the Mortgage Loan Documents and is contrary to the altered Mortgage Loan Documents and the representations by RCO and CHASE, which allege that BONNY K. MONIZ is a Borrower and/or Mortgagor.

82.     Mr. Prather also claimed in his letter that despite the recorded rescission of the sale notice of November 22, 2010 filed by RCO, the sale was proceeding as scheduled.  Contrary to Mr. Prather's representations the sale scheduled for November 22, 2010 did not occur.

83.     STACY MONIZ, despite the issues regarding the validity/enforceability of the Mortgage Loan Documents, continued in good faith with his Loan Modification efforts and fully, completely and timely provided Defendant CHASE with all requested documents and information.  In this regard, STACY MONIZ was required to continuously resubmit personal and financial documentation and/or information due to CHASE's own delays and misplacement of earlier received documents, and was provided assurances by CHASE that he was qualified for the loan modification program.

84.     BONNY K. MONIZ was never requested or required to participate in the loan modification process by CHASE and CHASE expressly rejected her participation.

85.     On or about February 23, 2011, despite the fact that STACY MONIZ was still in the negotiation process for a loan modification with CHASE, RCO filed another Notice of Intent to Foreclose.  The notice again named BONNY K. MONIZ as a "mortgagor."  STACY MONIZ

sent correspondence to RCO by email and regular mail informing RCO that he was still in loan modification negotiations with CHASE and according to CHASE's representations, no foreclosure would be instituted during this time.  STACY MONIZ further informed RCO again that his wife was not a party to the mortgage.

86.    STACY MONIZ also pointed out to RCO and CHASE the numerous deficiencies and violations of notice requirements both statutorily and by contract, the fact that no amount to cure had ever been provided, and informed them again of the fraudulent tampering and unauthorized alteration of the Mortgage document.

87.    STACY MONIZ received no response from RCO or CHASE regarding his correspondence.

88.    While awaiting a response from RCO and/or CHASE, STACY MONIZ did receive a letter from CHASE dated March 10, 2011 informing him that his Mortgage had been "canceled." The letter was from a Vice-President of CHASE, Larry Thode.  The letter also informed STACY MONIZ that if he had any questions to call the telephone number referenced in the letter.  The letter has never been rescinded.

89.    STACY MONIZ did call the telephone number provided within CHASE's March 10, 2011 letter and was informed by CHASE that in fact his Mortgage was canceled.

90.    Despite STACY MONIZ's communications with RCO and CHASE, regarding the loan modification, the Mortgage cancelation, and the fact that STACY MONIZ never received an amount to cure as required by State statutory law, neither RCO or CHASE canceled the non-judicial foreclosure sale.

91.    Thus, STACY MONIZ and BONNY K. MONIZ were compelled to file a Motion for Preliminary Injunction and Injunctive Relief against CHASE and RCO.  The matter was heard before the Honorable Karl S. Sakamoto on April 21, 2011.  Because of issues regarding service

on CHASE, since it had no place of business or registered agent in Hawaii, Judge Sakamoto, after review of the filing, granted a temporary restraining order against CHASE and RCO prohibiting the non-judicial sale.

92.     At the hearing, RCO for the first time stated that the non-judicial sale had been canceled even though no notice had been provided to the Court or the Plaintiffs at anytime prior to the hearing.

93.     Further proceedings were held before Judge Sakamoto on or about May 26, 2011. At that time RCO and CHASE informed the Court and the Plaintiffs that they would not proceed with a non-judicial sale and would provide notice of the cancelation.  To this date, the Plaintiffs have never received formal notice of the cancelation of the Notice of Intent to Foreclose filed by RCO on behalf of CHASE.

94.     CHASE, having canceled the mortgage, and failing to respond to the moving papers of the Plaintiffs has canceled any alleged debt owed to it by STACY MONIZ.

95.     Upon information and belief, sometime between November 9, 2005 and the present the Mortgage was irrevocably changed by one or more of the Defendants (other than RCO and the STATE of HAWAII) into a security through use of a Real Estate Mortgage Investment Conduit (REMIC) and/or Special Purpose Vehicle (SPV), and/or another method.

96.     The process of a mortgage and note becoming a Security is final and irreversible.  A Security cannot be used by CHASE and/or RCO to foreclose on the subject property.

97.     Because of the acts of CHASE and/or RCO the credit of STACY MONIZ has been damaged as he has been forced to accept credit at a higher interest rate and/or been rejected for credit because of the negative reporting by CHASE and/or RCO.

98.     The STATE of HAWAII, Bureau of Conveyances, should not have recorded the subject mortgage due to various deficiencies upon the face of the document. If the mortgage had not been recorded, STACY MONIZ, in all probability, would have been notified and would have become aware of the unauthorized tampering, alteration, and fraudulent nature of the Mortgage Loan Documents and would have taken the appropriate measures to correct and/or rescind the Mortgage.

99.     On or about November 7, 2011, Plaintiffs received a letter dated November 3, 2011 from RCO informing them that CHASE had referred "their loan" to RCO for foreclosure. The letter purports to be a notice of collecting a debt against STACY MONIZ and BONNY K. MONIZ.

100.    CHASE and RCO know or should know that counsel represents BONNY K. MONIZ, yet they contacted her directly. Further, the November 7, 2011 letter/notice is defective in that it fails to comply with applicable law relative to such notices and the provisions of the Mortgage Loan Documents.

101.    The November 7, 2011 letter ignores the facts and circumstances that RCO and CHASE have been put on notice of and is a further attempt by RCO and CHASE to enforce a void and fraudulent Mortgage against Plaintiffs.

102.    Plaintiffs separately responded to Defendant RCO's November 7, 2011 letter/notice in a timely manner and requested information they were entitled to receive.

103.    To date, Plaintiffs have received no response from Defendants RCO and/or CHASE regarding the November 7, 2011 letter/notice.

104.    From on or about July 2010 to the present, Defendants RCO and/or CHASE have held Defendant CHASE out as the Mortgagee and/or holder of Plaintiff STACY MONIZ's Mortgage and Note.

105.    Upon information and belief, Plaintiff STACY MONIZ's Mortgage and/or Note, was at all times relevant herein owned and/or controlled by Fannie Mae and/or securitized investors.

## IV. CAUSES OF ACTION

### COUNT I
### FRAUD IN THE FACTUM/EXECUTION
### (As to Defendants DVM, PHHMC, MERS and all Doe Defendants)

106.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 105 as if said paragraphs were fully set forth herein.

107.    Based upon the verified factual allegations as specifically set forth herein, Defendants DVM, PHHMC and MERS committed fraud in the factum/execution by forging, changing, altering, tampering with and/or otherwise falsifying the Loan Mortgage Documents to add that BONNY K. MONIZ as a Borrower/Mortgagor and that she was present and executed the Mortgage Loan documents on November 9 2005 or at anytime thereafter.

108.    Defendants DVM, PHHMC and MERS fraud in the factum/execution were legal causes of substantial damages to the Plaintiffs.

109.    The subject Mortgage Loan Documents are void and unenforceable because the Plaintiffs did not agree to include BONNY K. MONIZ as a Borrower/Mortgagor.

110.    Defendants DVM, PHHMC and MERS are liable to the Plaintiff for damages in an amount to be proven at trial.

### COUNT II
### FRAUD IN THE INDUCEMENT

111.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 110 as if said paragraphs were fully set forth herein.

112.    Based upon the verified factual allegations as specifically set forth herein, Defendants DVM, PHHMC and MERS committed fraud in the inducement by misrepresenting to STACY

MONIZ that he would be the only Borrower/Mortgagor on the subject loan as set forth in the application and the Loan Mortgage Documents executed by STACY MONIZ and duly notarized on November 9, 2005 and subsequently initialed by BONNY K. MONIZ.

113.    Defendants DVM, PHHMC and MERS made the false representations with the knowledge of their falsity and in contemplation of the Plaintiffs' reliance on the false representations.

114.    The Plaintiffs reasonably and justifiably relied on the false representations, and but for those representations, STACY MONIZ would not have entered into or continued with the subject loan.

115.    Defendants DVM, PHHMC and MERS fraud in the inducement were legal causes of substantial damages to the Plaintiffs.

116.    The subject Mortgage Loan Documents are void and unenforceable because the Plaintiffs did not agree to include BONNY K. MONIZ as a Borrower/Mortgagor.

117.    Defendants DVM, PHHMC and MERS are liable to the Plaintiff for damages in an amount to be proven at trial.

<u>COUNT III</u>
FRAUD
(As to Defendants PHH Mortgage Services, CHASE, PHHMC, RCO and MERS)

118.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 117 as if said paragraphs were fully set forth herein.

119.    Based upon the verified factual allegations as specifically set forth herein, Defendants PHH Mortgage Services committed fraud by doing business as mortgage loan servicers and/or brokers in the State of Hawaii without registration or a license and enforced the terms of a fraudulent Mortgage for approximately three (3) years.

120.    Based upon the verified factual allegations as specifically set forth herein, Defendant PHHMC committed fraud by acting as a mortgage lender in the State of Hawaii without registration, a license or exemption and enforced the terms of a fraudulent Mortgage for approximately three (3) years.

121.    Based upon the verified factual allegations as specifically set forth herein, the Mortgagee, Defendant MERS, committed fraud by doing business in the State of Hawaii without registration or a license and enforced the terms of a fraudulent Mortgage for approximately three (3) years.

122.    Based upon the verified factual allegations as specifically set forth herein, CHASE committed fraud by acting as a mortgage servicer and or broker and or subsequent mortgagee in the State of Hawaii without registration, a license or exemption and have continued to enforced the terms of a fraudulent Mortgage and foreclose upon Plaintiffs.

123.    Based upon the verified factual allegations as specifically set forth herein and after being put on notice by STACY MONIZ, CHASE, through its agent and representative/trustee RCO and RCO committed fraud by:

- Continuing to assert that BONNY K. MONIZ was a borrower/mortgagor without doing any investigation;

- Failing or refusing to provide STACY MONIZ with the amount to cure the default; failing to timely respond to STACY MONIZ'S requests and inquiries for information and documentation as required by State of Hawaii statute and the mortgage itself;

- Filing a second non-judicial notice of foreclosure while knowing that STACY MONIZ was still in loan modification negotiations with CHASE;

- Sending false information to STACY MONIZ that his loan servicer was PHH Mortgage and directing STACY MONIZ to contact PHH Mortgage for any further assistance; and

- Refusing to cancel the second notice of non-judicial foreclosure.

- By assuring STACY MONIZ that he was qualified for a loan modification.

124.    As a result of CHASE's and RCO's refusal to cancel the second Notice of Non-Judicial Foreclosure, the Plaintiffs were compelled to file for injunctive relief and in response CHASE and RCO provided no opposition and RCO informed the court at the time of the hearing that the second Notice of Non-Judicial Foreclosure had been cancelled.  Despite their assurances to the Court and Plaintiffs, to date Plaintiff's have never received notice that the Non-Judicial Foreclosure was cancelled.

125.    Defendants fraudulent acts were legal causes of substantial damages to the Plaintiffs.

126.    Defendants are liable to the Plaintiff for damages in an amount to be proven at trial.

COUNT IV
NEGLIGENT AND/OR INTENTIONAL MISREPRESENTATION
(All Defendants Except State of Hawaii)

127.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 126 as if said paragraphs were fully set forth herein.

128.    Based upon the verified factual allegations as specifically set forth herein, the acts and omissions of all Defendants named herein except for the State of Hawaii, constitutes negligent and/or intentional misrepresentation.

129.    In making the above representations the Defendants failed to exercise reasonable care and/or intentionally misled the Plaintiffs.

130.    Defendants' negligent and/or intentional misrepresentations were legal causes of substantial damages to the Plaintiffs.

131.    Defendants are liable to the Plaintiff for damages in an amount to be proven at trial.

COUNT V
VIOLATION OF H.R.S. CHAPTER 480
(As to all Defendants Except the State of Hawaii)

132.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 131 as if said paragraphs were fully set forth herein.

133.    The Plaintiffs are a "consumer" and "person" as those terms are defined in HRS Chapter 480-1 and the described acts and practices involve "trade or commerce", as the term is defined in HRS 480-2 (a).

134.    An unfair or deceptive act or practice (hereinafter "UDAP") in the conduct of any trade or commerce is unlawful, pursuant to HRS 480-2 (a).

135.    Based upon the specific verified factual allegations set forth herein, the Defendants and each of them, except the State of Hawaii have engaged in UDAP's that violate HRS 480-2 (a).

136.    Pursuant to 480-12 a contract or agreement in violation of HRS Chapter 480 is void and not enforceable at law or equity.

137.    Pursuant to HRS Chapter 480-13, a consumer who is injured by a UDAP is entitled for each UDAP, to be awarded a sum not less than $1,000 or threefold any damages sustained, whichever sum is greater, and reasonable attorney's fees together with the costs of suit.

138.    By committing the above-described acts, the Defendant's and each of them violated HRS Chapter 480 by engaging in unfair trade acts and practices and/or other wrongful and/or intentional conduct in violation of Chapter 480.

139.    As a direct and proximate result of the Defendants actions, Plaintiffs have suffered damages in an amount to be shown at trial.

COUNT VI

NEGLIGENCE

(As to all Defendants Except the State of Hawaii)

-23-

140.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 139 as if said paragraphs were fully set forth herein.

141.   Based upon the verified factual allegations as specifically set forth herein, the Defendants and each of them except for the State of Hawaii breached their duties of reasonable care and were otherwise negligent in the care and treatment of the Plaintiffs as it relates to the subject loan.

142.   There was a reasonably close, casual connection between the negligent conduct and the resulting injuries to the Plaintiffs.

143.   The Plaintiffs suffered actual damage as a result of the Defendants negligent conduct.

144.   As a direct and proximate result, the Plaintiffs have sustained general and special damages in an amount to be proven at trial.

COUNT VII
VIOLATION OF HRS 454
(As to Defendants DVM, PHHMC, PHH Mortgage Services and CHASE)

145.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 144 as if said paragraphs were fully set forth herein.

146.   Based upon the specific verified factual allegations set forth herein, Defendants DVM, PHHMC, PHH Mortgage Services and CHASE were not licensed or registered in the State of Hawaii as lenders and/or brokers and/or loan servicers in violation of HRS Chapter 454.

147.   As a direct and proximate result of the statutory violation, the Plaintiffs' have been damaged in an amount to be determined at trial.

COUNT VIII
BREACH OF THE IMPLIED COVENANT
OF GOOD FAITH AND FAIR DEALING

-24-

(As to all Defendants Except the State of Hawaii)

148.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 147 as if said paragraphs were fully set forth herein.

149.    Based upon the verified factual allegations as specifically set forth herein, the acts and omissions of all Defendants named herein except for the State of Hawaii, breaches the implied covenants of good faith and fair dealing.

150.    These breaches caused the Plaintiffs to suffer damages.

151.    As a direct and proximate result of the Defendants' breaches of the covenant of good faith and fair dealing, the Plaintiffs have been damaged in an amount to be proven at trial.

COUNT IX
UNJUST ENRICHMENT
(As to Defendants DVM, PHHMC, PHH Mortgage Services and CHASE)

152.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 151 as if said paragraphs were fully set forth herein.

153.    Based upon the verified factual allegations as specifically set forth herein, Defendants DVM, PHHMC, PHH Mortgage Services and CHASE have been unjustly enriched and should be compelled to pay back STACY MONIZ all monies received.

COUNT X
NEGLIGENT AND/OR INTENTIONAL INFLICTION
OF SEVERE EMOTIONAL DISTRESS
(As to all Defendants Except the State of Hawaii)

154.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 153 as if said paragraphs were fully set forth herein.

155. Based upon the verified factual allegations as specifically set forth herein, all Defendants named herein except for the State of Hawaii are liable to the Plaintiffs for negligent and/or intentional inflection of severe emotional distress.

156. As a result of the Defendants' negligent and/or intentional infliction of severe emotional distress, the Plaintiffs are entitled to damages in an amount to proven at trial.

COUNT XI
(CIVIL CONSPIRACY)
(As to all Defendants Except the State of Hawaii)

157. Plaintiffs reallege and incorporate by reference paragraphs 1 through 156 as if said paragraphs were fully set forth herein.

158. Upon information and belief, Defendants DVM, PHHMC, MERS, PHH Mortgage Services and others entered into a civil conspiracy to record, receive compensation from, and/or enforce a void and fraudulent Mortgage.

159. Upon information and belief, Defendants CHASE, RCO and others entered into a civil conspiracy to enforce a void and fraudulent and/or canceled Mortgage and to further deprive Plaintiffs' of their rights pursuant to the State of Hawaii foreclosure statutes and the terms of the Mortgage itself.

160. As a direct and proximate result of the Defendants conspiracy the Plaintiffs have suffered damages and the Defendants are liable to the Plaintiffs for damages in an amount to be proven at trial.

COUNT XII
QUIET TITLE

(As to Defendants PHHMC, MERS and CHASE)

161. Plaintiffs reallege and incorporate by reference paragraphs 1 through 160 as if said

paragraphs were fully set forth herein.

162.    Plaintiffs are informed and believe and thereupon allege that Defendants PHHMC, MERS and CHASE claim an interest in the subject property adverse to Plaintiffs.  However, the claim of said Defendants is without any right whatsoever, and said Defendants has no legal or equitable right, claim, or interest in the subject property.

163.    Plaintiffs therefore seek a declaration that the title to the subject property is vested in the Plaintiffs alone and that the Defendants PHHMC, MERS and CHASE be declared to have no estate, right, title or interest in the subject property and that said Defendants PHHMC, MERS and CHASE be forever enjoined from asserting any estate, right, title or interest in the subject property adverse to Plaintiffs herein.

**COUNT XIII**
**DECLARATORY JUDGMENT**
(As to Defendant State of Hawaii)

164.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 163 as if said paragraphs were fully set forth herein.

165.    The Mortgage Loan Documents recorded on the subject property on November 17, 2005, being Document # 3355688, are and were in violation of H.R.S. Chapters 456 and 502 and should not have been accepted for filing or recordation by Defendant SOH.
Plaintiffs request declaratory relief and/or an order that the above referenced Documents should not have been filed or recorded by Defendant SOH and further order that the above referenced Documents be expunged forthwith and/or other relief deemed appropriate by the Court.

**COUNT IVX**
**PROMISSORY ESTOPPEL**
(As to Defendants RCO and CHASE)

166.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 165 as if said paragraphs were fully set forth herein.

-27-

167.    Defendants CHASE and RCO represented to Plaintiff STACY MONIZ on numerous occasions both in written and oral communications that Defendant CHASE would not initiate foreclosure proceedings while Plaintiff STACY MONIZ was engaged in loan modification negotiations with Defendant CHASE.

168.    Plaintiff STACY MONIZ justifiably relied on the Defendants' representations and despite the issues regarding the validity/enforceability of the Mortgage Loan Documents, entered into good faith loan modification negotiations and fully, completely and timely provided Defendant CHASE with all requested documents and information.

169.    However, Defendant CHASE, through Defendant RCO, on two (2) separate occasions filed Notices of Intent to Foreclose while Plaintiff Stacy MONIZ was still fully engage in loan modification negotiations with Defendant CHASE.  On the first occasion, Defendant RCO and/or CHASE properly canceled and rescinded the Notice of Intent to Foreclose.

170.    On the second occasion, Defendants RCO and CHASE, despite being informed and specifically knowing that Plaintiff STACY MONIZ's was still engaged in ongoing loan modification negotiations, refused to cancel or otherwise rescind Defendant CHASE's Notice of Intent to Foreclose, which caused the Plaintiffs damages, including the filing of an extensive Motion for Temporary Restraining Order, which was granted by the Court.

171.    As a direct and proximate result of the Defendants RCO and CHASE's action the Plaintiffs have suffered damages and the Defendants are liable to the Plaintiffs for damages in an amount to be proven at trial.

**COUNT XV**
**RESPONDEAT SUPERIOR**
(As between Defendants CHASE and RCO)

172.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 171 as if said paragraphs were fully set forth herein.

-28-

173.    At all times material herein, when engaging in the conduct alleged herein Defendant RCO and its employees, agents or representatives were acting in the course and scope of their employment, agency and/or representation of Defendant CHASE.

174.    Therefore, Defendant CHASE is directly liable for the wrongful conduct of its employees, agents and representatives including Defendant RCO under the doctrines of respondeat superior, vicarious liability and/or agency.

COUNT XVI
PUNITIVE DAMAGES
(As to all Defendants Except the State of Hawaii)

175.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 174 as if said paragraphs were fully set forth herein.

176.    Based on the conduct alleged herein, Defendants and each of them, except for the State of Hawaii, engaged in conduct that was willful, wanton, and/or grossly negligent, and in callous disregard for the rights and sensibilities of Plaintiffs, and Plaintiffs are entitled to an award of punitive damages against Defendants in an amount sufficient to punish said Defendants and to deter others from engaging in similar misconduct.

**V. REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs STACY MONIZ and BONNY K. MONIZ request relief against **all the Defendants, jointly and severally, except Defendant STATE of HAWAII** as follows:

A.    For damages in an amount to be determined at trial, including but not limited to general, special and consequential damages;

B.    For each UDAP act engaged in by Defendants, award statutory damages of not less than $1,000.00 or three (3) times the damages the Plaintiffs sustained, whichever is

greater;

C.     For exemplary and punitive damages;

D.     For reasonable attorneys' fees, costs, expenses, pre-judgment and post-judgment interest;

E.     For an order compelling Defendants PHHMC, MERS and CHASE to transfer legal title and possession of the subject property to Plaintiffs;

F.     For a declaration and determination that Plaintiffs are the rightful holder of title to the subject property and that Defendants PHHMC, MERS and CHASE be declared to have no estate, right, title or interest in said property;

G.     For a judgment forever enjoining Defendants PHHMC, MERS and CHASE from claiming any estate, right, title or interest in the subject property;

H.     For a judgment that the Mortgage Loan Documents dated November 9, 2005 are void and unenforceable; and

I.     For any other equitable or legal relief that this Court deems just and under the circumstances.

**As to Defendant State of Hawaii:**

Declaratory relief and/or an order that the above referenced Documents should not have been filed or recorded by Defendant SOH and further order that the above referenced Documents be expunged forthwith and/or other relief deemed appropriate by the Court.

DATED: Honolulu, Hawaii April 9, 2012.

STACY MONIZ

Petitioner, Pro Se

GARY M. LEVITT
Attorneys for Plaintiff
BONNY K. MONIZ

-30-

## VERIFICATION

The undersigned Plaintiff Stacy Moniz hereby verifies under penalty of law that the above and foregoing Amended Verified Complaint is true and correct to the best of his knowledge and belief.

_____

STACY MONIZ

The undersigned Plaintiff Bonny k. Moniz hereby verifies under penalty of law that the above and foregoing Amended Verified Complaint as to the facts pertaining to her actions or inactions is true and correct to the best of their knowledge and belief.

_____

BONNY K. MONIZ

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT
STATE OF HAWAII

| | |
|---|---|
| STACY MONIZ and BONNY K. MONIZ, | ) CIVIL NO. |
| | )    (Other Civil Action) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| CHASE HOME FINANCE, LLC a foreign limited liability company; PHH MORTGAGE CORPORATION, a foreign corporation; PHH MORTGAGE SERVICES, a registered trade name; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a foreign corporation; DESSERT VALLEY MORTGAGE, LLC, a foreign limited liability company; RCO HAWAII LLLC, a Hawaii limited liability law company; STATE OF HAWAII DEPARTMENT OF LAND AND NATURAL RESOURCES, BUREAU OF CONVEYANCES, DOE DEFENDANTS 1-100 and DOE ENTITIES 1-100 | ) DEMAND FOR JURY TRIAL |
| Defendants | ) |
| | ) |

DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial by Jury on all issues so triable.

DATED: Honolulu, Hawaii April 9, 2012.

STACY MONIZ

Petitioner, Pro Se

GARY M. LEVITT

Attorneys for Plaintiff

BONNY K. MONIZ

STACY MONIZ
47-563 Hua Place
Kaneohe, Hawaii 96744
Tel.: (808) 258-7448

Plaintiff, PRO SE

GARY M. LEVITT          4433
2210 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii   96813-3917
Telephone:  (808) 224-5545
Facsimile:  (808) 239-4475

Attorney for Plaintiff
BONNY K. MONIZ

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAII

| | |
|---|---|
| STACY MONIZ and BONNY K. MONIZ,  ) | Civil No. i1 - 1 - 2733 - 11 ECN |
| ) | (Other Civil Action) |
| ) | |
| Plaintiff,  ) | |
| ) | |
| vs.  ) | |
| CHASE HOME FINANCE, LLC a foreign  ) | SUMMONS |
| limited liability company; PHH  ) | |
| MORTGAGE CORPORATION, a foreign  ) | |
| corporation; PHH MORTGAGE  ) | |
| SERVICES, a registered trade name;  ) | |
| MORTGAGE ELECTRONIC  ) | |
| REGISTRATION SYSTEMS, INC., a  ) | |
| foreign corporation; DESSERT VALLEY  ) | |
| MORTGAGE, LLC, a foreign limited  ) | |
| liability company; RCO HAWAII LLLC, a  ) | |
| Hawaii limited liability law company;  ) | |
| STATE OF HAWAII DEPARTMENT OF  ) | |
| LAND AND NATURAL RESOURCES,  ) | |
| BUREAU OF CONVEYANCES, DOE  ) | |
| DEFENDANTS 1-100 and DOE ENTITIES )  ) | |
| 1-100  ) | |
| Defendants,  ) | |

-1-

# **SUMMONS**

STATE OF HAWAII

TO THE ABOVE NAMED·DEFENDANT:

YOU ARE HEREBY SUMMONED and required to file with the court and serve upon Plaintiff Pro Se Stacy Moniz and Attorney, Gary M. Levitt, Esq., who's address is stated above, an answer to the Complaint which is attached. This action must be taken within twenty (20) days after service of this summons upon you, exclusive of the day of service. If you fail to make your answer within the twenty (20) day time limit, Judgment by default will be taken against you for the relief demanded in the Complaint.

    This Summons shall not be personally delivered between 10:00p.m. and 6:00a.m. on premises not open to the general public, unless a Judge of the above-entitled Court permits, in writing on this Summons, personal delivery during those hours.

    A failure to obey this Summons may result in an entry of default and default judgment against the disobeying person or party.

    DATED: Honolulu, Hawaii, April 9, 2012.

F. OTAKE       SEAL

_____
CLERK OF THE ABOVE-ENTITLED COURT

-2-