BEN SUTER, HISB No. 3801
ben.suter@kyl.com
Keesal, Young & Logan, LLP
A Hawai'i Limited Liability Law Partnership
450 Pacific Avenue
San Francisco, California 94133
Telephone: (415) 398-6000
Facsimile: (415) 981-0136

Attorneys for Plaintiff
JPMorgan Chase Bank, N.A.

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| JPMorgan Chase Bank, N.A.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>Stacy Moniz,<br><br>　　　　　Defendant. | CIV. NO. 1:15-CV-00512-DKW-BMK<br>(Contract)<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>**[Filed concurrently with Request for Judicial Notice]**<br><br>Date: March 4, 2016<br>Time: 9:30 a.m.<br>Judge: Hon. Derrick K. Watson<br>Related To: ECF # 10 |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ......................................................................... 1

II.   STATEMENT OF FACTS ........................................................... 2

III.  LEGAL STANDARD .................................................................. 3

IV.   LEGAL ARGUMENT.................................................................. 4

A.    This Court Has Subject Matter Jurisdiction Over This Action,
      And Mr. Moniz's Motion Fails To The Extent It Is Premised
      Upon Rule 12(b)(1) ............................................................... 4

B.    The Motion Fails To The Extent It Is Premised Upon Rule
      12(b)(6)................................................................................. 5

C.    None Of The Other Arguments Raised In The Motion Have
      Merit .................................................................................... 5

      1.    Chase's Breach Of Contract Claim Is Not A
            Compulsory Counterclaim In The State Court
            Action...................................................................... 5

            a.    Chase's Breach Of Contract Claim Is Not
                  "Logically Related" To The Claims Asserted
                  By Mr. Moniz In The State Court Action..................... 6

            b.    Mr. Moniz Could Not Force Chase To
                  Pursue Any Particular Collection Method By
                  Simply Filing The State Court Action......................... 12

      2.    The State Court's October 2, 2012 Order Does Not
            Preclude Chase From Pursuing Its Breach Of
            Contract Claim ...................................................... 14

      3.    The "First To File" Rule Is Inapplicable ............................. 16

      4.    The "Prior Exclusive Jurisdiction" Doctrine Is
            Inapplicable............................................................ 16

      5.    Abstention Would Be Inappropriate ..................................... 17

a.     Abstention Under The *Younger* Doctrine Would Be Inappropriate ................................................. 18

b.     Abstention Under The *Colorado River* Doctrine Would Be Inappropriate ............................... 19

6.     Application Of The *Rooker-Feldman* Doctrine Would Be Inappropriate ........................................................ 21

7.     Hawaii Revised Statutes Sections 501-1 and 501-2 Have No Bearing On This Dispute ....................................... 21

V.     CONCLUSION ............................................................................ 23

WORD LIMITATION CERTIFICATION ......................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990) ...........................................................................4, 5

*Bauman v. Bank of Am., N.A.*,
   808 F.3d 1097 (6th Cir. 2015) ....................................................................8, 9, 11

*Butler v. L.A. County*,
   617 F. Supp. 2d 994 (C.D. Cal. 2008) ..............................................................14

*Chapman v. Deutsche Bank Nat'l Trust Co.*,
   651 F.3d 1039 (9th Cir. 2011) ...........................................................................16

*Douglas v. NCNB Tex. Nat'l Bank*,
   979 F.2d 1128 (5th Cir. 1992) .....................................................................12, 13

*Evans v. American Surplus Underwriters Corp.*,
   739 F. Supp. 1526 (N.D. Ga. 1989) ...................................................................17

*Hanover Ins. Co. v. Fremont Bank*,
   68 F. Supp. 3d 1085, 1109 (N.D. Cal. 2014) .....................................................16

*Holder v. Holder*,
   305 F.3d 854 (9th Cir. 2002) .............................................................................20

*Intel Corp. v. Advanced Micro Devices, Inc.*,
   12 F.3d 908 (9th Cir. 1993) .........................................................................19, 20

*Kokkonen v. Guardian Life Ins. Co.*,
   511 U.S. 375 (1994)............................................................................................3

*Kougasian v. TMSL, Inc.*,
   359 F.3d 1136 (9th Cir. 2004) ...........................................................................21

*Parsons Steel, Inc. v. First Alabama Bank*,
   474 U.S. 518 (1986)....................................................................................15, 19

*Pennzoil Co. v. Texaco, Inc.*,
   481 U.S. 1 (1987).........................................................................................18, 19

*Sexton v. NDEX West, LLC*,
 713 F.3d 533 (9th Cir. 2013) ................................................................4

*Simonson v. Ameriquest Mortg. Co.*,
 2006 U.S. Dist. LEXIS 86947 (D. Minn. Nov. 30, 2006)..................10

*Sprint Communs., Inc. v. Jacobs*,
 134 S. Ct. 584 (2013)..................................................................17, 18

*Tosco Corp. v. Cmtys. for a Better Env't*,
 236 F.3d 495 (9th Cir. 2001) ...............................................................3

*Transamerica Life Ins. Co. v. Jurin*,
 2015 U.S. Dist. LEXIS 9349 (N.D. Cal. Jan. 27, 2015)....................16

*U.S. Bank N.A. v. Ribeiro*,
 2012 U.S. Dist. LEXIS 17795 (D. Nev. Feb. 14, 2012)....................17

*U.S. v. S. Cal. Edison Co.*,
 300 F. Supp. 2d 964 (E.D. Cal. 2004) ...............................................14

*Usher v. City of Los Angeles*,
 828 F.2d 556 (9th Cir. 1987) ...............................................................4

*Valencia v. Anderson Bros. Ford*,
 617 F.2d 1278 (7th Cir. 1980) ......................................................9, 11

### STATE CASES

*Booth v. Lewis*,
 8 Haw. App. 249 (1990) ..............................................................7, 11

*In re Campbell*,
 34 Haw. 10 (1936) ..............................................................................22

*Collins v. South Seas Jeep Eagle*,
 87 Haw. 86 (1997) ................................................................................6

*Gebrueder Heidemann, K.G. v. A.M.R. Corp.*,
 107 Idaho 275 (1984).........................................................................10

*Lundberg v. Northwestern Nat'l Bank*,
 216 N.W.2d 121 (Minn. 1974) ..........................................................10

*Santos v. DOT*,
  64 Haw. 648 (1982) .........................................................................15

*Wells Fargo Bank, N.A. v. Lee*,
  20 N.E.3d 1236 (Ohio App. 2014) ...............................................7, 11

## FEDERAL STATUTES AND RULES

28 U.S.C.
  §§ 1331 and 1332.........................................................................3
  § 1332..........................................................................................4
  § 1738........................................................................................15

FDCPA ...................................................................................8, 9, 11

FRCP 12(b)(1)........................................................................3, 4, 5, 14

FRCP 12(b)(1) and 12(b)(6) ...............................................................3

FRCP 12(b)(6)........................................................................3, 4, 5, 14

FRCP 13(a) ...................................................................6, 8, 9, 12, 13

## STATE STATUTES AND RULES

Haw. Rev. Stat.
  § 501-1 ................................................................................21, 22
  §§ 501-1 and 501-2 ...................................................................21
  § 501-52 ..............................................................................21, 22
  § 602-11 ...................................................................................13

HRCP 13(a)......................................................................................6, 13

HRCP 13(b)........................................................................................15

TILA...........................................................................................7, 9, 11

## MISCELLANEOUS

17A-122 Moore's Fed. Practice - Civil § 122.93(1) ...............................20

Rules Enabling Act ............................................................................12

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Plaintiff JPMORGAN CHASE BANK, N.A. ("Chase") respectfully submits the following Memorandum of Points and Authorities in Opposition to Defendant STACY MONIZ's ("Mr. Moniz") Motion to Dismiss ("Motion"), which was filed on January 14, 2016.

## I.     INTRODUCTION

The scope of this lawsuit is narrow and simple: Chase seeks to recover the damages suffered as a result of Mr. Moniz's breach of his obligations under a promissory note (the "Note").  As acknowledged in the Complaint, Mr. Moniz and his wife Bonny Moniz filed a lawsuit (the "State Court Action") against Chase and other entities in 2011 challenging the validity of a mortgage (the "Mortgage"), a distinct and separate contract which secures the Note.   (Complaint fn. 1). Mr. Moniz's Amended Verified Complaint ("AVC") in the State Court Action (1) focuses entirely upon the Mortgage contract, (2) does not identify any irregularities in or objections to the Note contract, (3) does not dispute that money was loaned and not repaid, and (4) does not allege that Chase or any other entity breached the Note contract.  Nonetheless, Mr. Moniz contends that Chase's breach of contract claim is a purported compulsory counterclaim that must be raised in the State Court Action.   Mr. Moniz also argues that this Court should abstain or otherwise refuse to entertain this case pursuant to a variety of federal procedural devices such as the "first to file" rule, "prior exclusive jurisdiction" doctrine, *Rooker-Feldman* doctrine, and multiple abstention rules.

As illustrated below, none of Mr. Moniz's arguments have merit.  Chase's breach of contract claim on the Note is not "logically related" to the causes of action asserted in the State Court Action and is thus not a compulsory counterclaim.  Moreover, Mr. Moniz cannot unilaterally force Chase to pursue

judicial debt collection remedies by the mere expedience of filing a lawsuit against Chase. Finally, Mr. Moniz's interpretation of federal abstention principles is completely misguided. For these reasons, the Motion should be denied in its entirety.

## II.  <u>STATEMENT OF FACTS</u>

For the purposes of this Opposition, Chase hereby reiterates the following allegations from the Complaint and further directs the Court to the judicially noticeable facts set forth in the concurrently filed Request for Judicial Notice ("RJN"):

1.     On or around November 9, 2005, Mr. Moniz obtained a $483,000 loan ("Subject Loan") from lender PHH Mortgage Corporation ("PHH"). (Complaint ¶ 6). The Subject Loan was memorialized by the Note, which was executed by Mr. Moniz. (Complaint ¶ 6). The Note details Mr. Moniz's repayment obligations and the consequences that may result from default. (Complaint ¶ 6). Chase currently possesses the original Note. (Complaint ¶ 7).

2.     As security for the Note, Mr. Moniz and his wife Bonny Moniz executed and delivered the Mortgage, which was recorded. (Complaint fn. 1; RJN Exh. 1).

3.     Mr. Moniz made payments on the Note for more than four years, but eventually defaulted. (Complaint ¶ 8). The default remains uncured. (Complaint ¶ 10).

4.     On November 9, 2011, Mr. Moniz and his wife Bonny Moniz filed the State Court Action. The State Court Action is currently pending, and Chase is a defendant in that case. (Complaint fn. 1).

5.     On April 9, 2012, the Monizes filed the AVC, the operative complaint in the State Court Action. (RJN Exh. 2). The AVC asserts that the Mortgage (not the Note) is fraudulent because the document was allegedly altered in November

2005, after Mr. Moniz executed it.  (*See* RJN Exh. 2 ¶¶ 64-73).[1]  The AVC also takes issue with Chase's alleged conduct as a loan servicer, as Mr. Moniz contends that Chase made misrepresentations in connection with Mr. Moniz's attempts to obtain a loan modification.  (*See* RJN Exh. 2 ¶¶ 122-124, 166-171).  However, the AVC admits or ignores, rather than disputes, the facts supporting Chase's breach of contract claim.  Indeed, the AVC: (1) expressly admits that Mr. Moniz executed the Note; (2) does not allege any irregularities in the Note; (3) does not dispute that Mr. Moniz received all proceeds due under the Note; and (4) expressly admits that Mr. Moniz defaulted on his payment obligations.  (*See* RJN Exh. 2 ¶¶ 19, 40).

## III.  <u>LEGAL STANDARD</u>

The Motion was filed pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.  (Motion pg. 6).  Rule 12(b)(1) allows a party to move for dismissal on the ground that a court lacks subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  A federal court is a court of limited jurisdiction, and may adjudicate only those cases authorized by the Constitution and by Congress. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).  The basic federal jurisdiction statutes, 28 U.S.C. sections 1331 and 1332, confer "federal question" and "diversity" jurisdiction, respectively.  When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion.  *Tosco Corp. v. Cmtys. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

Meanwhile, Rule 12(b)(6) allows a party to move for dismissal on the ground that a pleading fails "to state a claim upon which relief can be granted."

---

[1] Chase had no involvement whatsoever with the origination or documentation of the Subject Loan or Mortgage in November 2005.  Indeed, Chase had nothing to do with Mr. Moniz's loan until two years later, when Chase became the loan servicer in November 2007.

FED. R. CIV. P. 12(b)(6).  Under this Rule, a court may dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  In making this context-specific evaluation, a court "must presume all factual allegations of the complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).  A complaint should not be dismissed under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *Balistreri*, 901 F.2d at 699.

## IV.  LEGAL ARGUMENT

### A.  This Court Has Subject Matter Jurisdiction Over This Action, And Mr. Moniz's Motion Fails To The Extent It Is Premised Upon Rule 12(b)(1)

Although the Motion asserts that the Court lacks subject matter jurisdiction over this dispute, it does not clearly set forth the basis for this argument.[2]  (Motion pg. 6).  In any event, it is plain that this Court may exercise subject matter jurisdiction over this dispute under 28 U.S.C. § 1332, the federal diversity jurisdiction statute.  To invoke a federal court's diversity jurisdiction, a plaintiff must allege the diverse citizenship of all parties and that the matter in controversy exceeds $75,000.  *See* 28 U.S.C. § 1332.  Here, the Complaint clearly alleges that

---

[2] Mr. Moniz briefly mentions "subject matter jurisdiction" in his discussions of the "Prior Exclusive Jurisdiction" doctrine and the *Rooker-Feldman* doctrine. (Motion pgs. 15, 27).  However, as explained *infra*, these doctrines have no applicability to this case. *See* Sections IV(C)(4) and (6), *infra*.  Additionally, the Ninth Circuit has observed that "Prior Exclusive Jurisdiction" doctrine is not a rule of subject matter jurisdiction but rather a prudential common law rule of judicial abstention.  *See Sexton v. NDEX West, LLC*, 713 F.3d 533, 536 fn. 5 (9th Cir. 2013).

the amount in controversy exceeds $75,000 and that Chase and Mr. Moniz are citizens of different states.  (Compl. ¶¶ 1-4, 10).  The Motion does not dispute or disprove these allegations.  Thus, to the extent the Motion is premised upon Rule 12(b)(1), it fails.

### B.  The Motion Fails To The Extent It Is Premised Upon Rule 12(b)(6)

The Motion also summarily states that the Complaint should be dismissed for failure to state a claim upon which relief can be granted by this Court.  (Motion pg. 6).  Again, the bases for Mr. Moniz's assertion are entirely unclear.  The Motion does not dispute that the facts alleged in the Complaint are sufficient to state a claim for breach of contract.  In other words, the Motion does not argue that "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Balistreri*, 901 F.2d at 699.  Accordingly, insofar as the Motion is premised upon Rule 12(b)(6), it should be denied.

### C.  None Of The Other Arguments Raised In The Motion Have Merit

The remainder of the Motion is a disorganized collection of arguments asserting that this Court should stay or dismiss this case.  As detailed below, none of Mr. Moniz's arguments have any merit.

#### 1.  Chase's Breach Of Contract Claim Is Not A Compulsory Counterclaim In The State Court Action

Many of Mr. Moniz's arguments appear to be based upon the contention that Chase's breach of contract claim is supposedly a compulsory counterclaim in the State Court Action.  This contention is baseless.

///

///

### a. Chase's Breach Of Contract Claim Is Not "Logically Related" To The Claims Asserted By Mr. Moniz In The State Court Action

The Motion repeatedly asserts that Chase's breach of contract claim should be filed as a compulsory counterclaim in the State Court Action, but this assertion is baseless. Rule 13(a) of the Hawaii Rules of Civil Procedure ("HRCP") provides:

> (a) Compulsory counterclaims. A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction. But the pleader need not state the claim if (1) at the time the action was commenced the claim was the subject of another pending action or (2) the opposing party brought suit upon the claim by attachment or other process by which the court did not acquire jurisdiction to render a personal judgment on that claim, and the pleader is not stating any counterclaim under this Rule 13.

HRCP 13(a). Hawaii's compulsory counterclaim rule mirrors its federal counterpart in Rule 13(a) of the Federal Rules of Civil Procedure ("FRCP").[3] Hawaii courts use the widely-accepted "logical relationship" test in determining whether a particular counterclaim is compulsory:

> A claim has a logical relationship to the original claim if it arises out of the same aggregate of operative facts as the original claim either because the same aggregate operating facts serves as a basis of both claims or the

---

[3] Where a Hawaii rule of civil procedure is identical to a federal rule, federal courts' interpretations of the federal counterpart are highly persuasive. *Collins v. South Seas Jeep Eagle*, 87 Haw. 86, 88 (1997).

> core of facts upon which the original claim rests activates
> additional legal rights in party defendant that otherwise
> would remain dormant.

*Booth v. Lewis*, 8 Haw. App. 249, 252 (1990) (*citing* 6 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure: Civil 2d § 1410, at 52-55 (1990)). Courts applying this test have concluded that the mere fact that a borrower files a lawsuit arising out of his lender-borrower relationship does ***not*** transform a lender's collection claim into a compulsory counterclaim.

 *Wells Fargo Bank, N.A. v. Lee*, 20 N.E.3d 1236 (Ohio App. 2014) is on point. The borrowers in *Lee* had previously filed a lawsuit against their lender, seeking rescission of their loan and pursuing claims for fraud, civil conspiracy, and violations of the Truth-in-Lending Act ("TILA"). *Lee*, 20 N.E.3d at 1240-41. While the first lawsuit was pending, Wells Fargo Bank, N.A. obtained the loan and initiated judicial foreclosure proceedings in a second lawsuit. *Id.* at 1241. The first lawsuit was eventually dismissed with prejudice, and the borrowers objected that Wells Fargo Bank, N.A.'s judicial foreclosure claim in the second lawsuit was a compulsory counterclaim that should have been asserted in the first lawsuit. *Id.* at 1242. The trial court disagreed, holding that "foreclosure is not a compulsory counterclaim in an action alleging improper loan origination." *Id.* The Court of Appeals of Ohio affirmed, pointing to the logical relationship test and holding:

> Even though the loan could have been rescinded, there
> was no obligation upon the holder of the note to seek to
> enforce its rights in the prior lawsuit. The earlier action
> merely decided whether the Lees had a valid defense to
> the enforcement of the note and mortgage. The holder of
> the note is a necessary party to the action in order to
> preserve its interests in the note and mortgage. Had the
> Lees been successful and obtained rescission of the
> mortgage, the holder of the note would not have been
> able to enforce the note and mortgage. ***However, the
> mere fact that a debtor preemptively sought to assert***

> ***certain claims that would affect later enforcement of a***
> ***note does not require that the holder must assert a debt***
> ***collection action at the same time.***

*Id.* at 1246-47 (emphasis added).

Other courts have similarly concluded that collection claims are not compulsory counterclaims in borrower lawsuits alleging unlawful conduct in loan origination or servicing. One recent example is *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097 (6th Cir. 2015). The borrowers in *Bauman* had previously filed a lawsuit against their lender asserting violations of the Fair Debt Collection Practices Act ("FDCPA"), in which the lender prevailed on summary judgment. *Bauman*, 808 F.3d at 1097. The borrowers subsequently filed a second lawsuit against the lender seeking a judicial declaration that the lender was barred from ever filing a foreclosure action due to its failure to assert a foreclosure counterclaim in the initial FDCPA lawsuit. *Id.* The district court granted the lender's motion to dismiss, and the borrowers appealed. *Id.*

The Sixth Circuit affirmed. Analyzing FRCP 13(a), the court noted:

> [T]o prove that a foreclosure action is a compulsory
> counterclaim to the FDCPA action, the [borrowers] must
> first show that the two claims "arise" out of the same
> transaction or occurrence. Rather than look to whether
> the original claim and counterclaim literally arise out of
> the same transaction or occurrence, we ask, "Is there a
> logical relationship between the two claims?" Under this
> test, we determine whether the issues of law and fact
> raised by the claims are ***largely the same*** and whether
> ***substantially the same evidence*** would support or refute
> both claims. A partial overlap in issues of law and fact
> does not compel a finding that two claims are logically
> related.

*Id.* (emphasis in original) (internal quotations and citations omitted). The court acknowledged that, in the literal sense, a foreclosure action and an FDCPA action

arise out of the same loan transaction. However, the court concluded that a foreclosure claim is not a compulsory counterclaim in an FDCPA action because foreclosure claims and FDCPA claims raise different issues of law and fact. *Id.* While an FDCPA claim asserts that a lender has acted unlawfully in collecting a debt, a foreclosure claim merely asserts that a borrower has defaulted on a contract that the lender is entitled to enforce. *Id.*

The *Bauman* court also noted that policy reasons compelled the conclusion that a collection claim was not a compulsory counterclaim. *Id.* Indeed, if collection claims were compulsory counterclaims in every lawsuit filed by a borrower against a lender, this would "require lenders to initiate foreclosure proceedings as a counterclaim when they otherwise may not have done so" and thereby discourage borrowers from pursuing claims. *Id.* In light of these considerations, the Sixth Circuit held that a collection claim is not a compulsory counterclaim in a lawsuit alleging unlawful debt collection practices. *Id.*

The Seventh Circuit reached similar conclusions in *Valencia v. Anderson Bros. Ford*, 617 F.2d 1278 (7th Cir. 1980). *Valencia* considered whether a lender's collection claim is a compulsory counterclaim in a borrower's TILA action. The court recognized that "[t]he sole connection between a TILA claim and a debt counterclaim is the initial execution of the loan document[;] [a] flexible application of the logical relationship test reveals that this connection is so insignificant that compulsory adjudication of both claims in a single lawsuit will secure few, if any, of the advantages envisioned in Rule 13(a)." *Valencia*, 617 F.2d at 1291. Noting that "[t]he TILA claim and debt counterclaim raise different legal and factual issues governed by different bodies of law," the Seventh Circuit rejected the idea that the collection claim qualified as a compulsory counterclaim.

A fair reading of Mr. Moniz's AVC in the State Court Action reveals that the claims alleged therein are not "logically related" to Chase's breach of contract

claim. Although the respective claims are literally "related" in that they arise out of the borrower-lender relationship between Mr. Moniz and Chase, they raise entirely different issues of law and operative fact. The instant lawsuit is nothing more than a collection action rooted in contract law. The only factual issues are: (1) does Chase possess the Note; (2) did Mr. Moniz default on the Note; and (3) what is the current amount owed? None of these issues are in dispute in the State Court Action, where Mr. Moniz has not alleged any contractual claims arising out of the Note.

In the State Court Action, Mr. Moniz admits or ignores, rather than disputes, the facts forming Chase's present breach of contract claim. Indeed, the AVC: (1) expressly admits that Mr. Moniz executed the Note; (2) does not allege any irregularities in the Note; (3) does not dispute that Mr. Moniz received all proceeds due under the Note; and (4) expressly admits that Mr. Moniz defaulted on his payment obligations. (*See* RJN Exh. 2 ¶¶ 19, 40). The material allegations of the AVC focus exclusively on the ***Mortgage*** – a distinct and separate instrument which encumbers Mr. Moniz's real property.[4] According to the AVC, the Mortgage (not the Note) is fraudulent because the document was allegedly altered in November

---

[4] Courts routinely find that promissory notes and the mortgages that secure them are distinct contracts and are therefore separately enforceable. *See, e.g., Simonson v. Ameriquest Mortg. Co.*, 2006 U.S. Dist. LEXIS 86947, at *15 (D. Minn. Nov. 30, 2006) ("[A] mortgage and a note are separate and independent contracts, differing in their nature and purpose. The note is a distinct instrument enforceable according to its terms and independently of the mortgage. Thus, even assuming that Plaintiff's mortgage is void, the Note may still be enforced.") (internal quotations omitted); *Lundberg v. Northwestern Nat'l Bank*, 216 N.W.2d 121, 123 (Minn. 1974) (same); *Gebrueder Heidemann, K.G. v. A.M.R. Corp.*, 107 Idaho 275, 282 (1984) ("[I]f the mortgage given as security is defective or has become valueless, the mortgagee, assuming it prevails on the merits, is still entitled to a judgment on the promissory note which is independent of the mortgage security.").

2005, after Mr. Moniz executed it (but two years *before* Chase had any dealings with Mr. Moniz). (*See* RJN Exh. 2 ¶¶ 64-73). The AVC also takes issue with Chase's alleged conduct as a loan servicer, as Mr. Moniz contends that Chase made misrepresentations in connection with Mr. Moniz's attempts to obtain a loan modification. (*See* RJN Exh. 2 ¶¶ 122-124, 166-171). Mr. Moniz's causes of action have no more in common with a debt collection claim than did the rescission, FDCPA, and TILA claims analyzed in *Lee*, *Bauman* and *Valencia*. *See Bauman*, 808 F.3d at 1097 ("Indeed, the Baumans' FDCPA claim does not contest their debt obligation, but rather focuses on who attempted to collect the debt and the manner in which they attempted to do so.").

Thus, contrary to Mr. Moniz's conclusory assertions in the Motion, Chase's breach of contract claim on the Note is not "logically related" to his claims in the State Court Action.[5] Mr. Moniz does not explain how the issues of law and fact

---

[5] In the Motion, Mr. Moniz offers the conclusory assertion that Chase's breach of contract claim is logically related to his claims in the State Court Action because "Defendant is contesting the validity of the mortgage documents, including the promissory note being sued upon here, and claiming fraud." (Motion pg. 11). However, Mr. Moniz does not cite any claims or allegations in the AVC illustrating his contention – *i.e.*, claims or allegations articulating a basis for "contesting the validity of" the Note. The fact of the matter is that the AVC focuses entirely upon the Mortgage.

Mr. Moniz also cites to a handful of cases that purportedly support his proposition that Chase's claim for breach of the Note contract is a compulsory counterclaim to his claims arising out of the Mortgage. (Motion pgs. 11-12). However, Mr. Moniz does not provide any analysis of the cases or demonstrate how the unique factual and legal circumstances of the cases parallel those of this dispute. Indeed, none of the cases hold that where a borrower challenges the validity of a security contract, a lender must respond with a counterclaim to recover the debt created by a promissory note contract. Application of the logical relationship test is inherently case-specific, as it evaluates the particular facts supporting asserted claims and purported counterclaims. *See generally Booth*, 8 Haw. App. at 252. As illustrated in Section IV(A)(1) of this brief, an application of the logical relationship test

raised by the respective claims are "largely the same" or how "substantially the same evidence" will support or refute the respective claims. In fact, as illustrated above, the issues of law and fact are **not** the same and the respective claims rely on **different** material facts. For this reason, Mr. Moniz's argument that Chase's breach of contract claim is a compulsory counterclaim which must be asserted in the State Court Action is meritless.

### b. Mr. Moniz Could Not Force Chase To Pursue Any Particular Collection Method By Simply Filing The State Court Action

In claiming that Chase's breach of contract claim is a compulsory counterclaim in the State Court Action, Mr. Moniz is essentially arguing that borrowers can unilaterally force lenders to pursue particular collection methods by simply filing a lawsuit. Courts have rejected this contention.

In *Douglas v. NCNB Tex. Nat'l Bank*, 979 F.2d 1128 (5th Cir. 1992), the borrowers had previously filed against their lender a fraud action arising out of a promissory note. *Douglas*, 979 F.2d at 1129. The lender did not file any counterclaims, and the fraud action was eventually dismissed with prejudice. *Id.* When the lender subsequently filed a new action seeking to collect on the debts, the borrowers argued that the collection claims were barred because they were supposedly compulsory counterclaims that should have been raised in the initial fraud action. *Id.*

The Fifth Circuit rejected the borrowers' argument. The court recognized that, under the Rules Enabling Act, the FRCP cannot operate to "abridge, enlarge or modify any substantive right." *Id.* at 1130 (quoting 28 U.S.C. § 2702). Thus, the compulsory counterclaim provisions of FRCP 13(a) cannot be applied if they

---

shows that Chase's claim for breach of the Note contract **is not** a compulsory counterclaim in the State Court Action.

would effectively "abridge, enlarge or modify" the substantive rights of parties to a loan transaction. *Id.* The court noted that, under applicable state law, lenders had access to various judicial and non-judicial remedies when a borrower defaulted on a debt. *Id.* The court held that if FRCP 13(a) required a lender to pursue judicial collection remedies and forego others upon the filing of a lawsuit by a borrower, this would constitute an "abridgement, enlargement or modification" of the substantive rights of parties to the loan transaction. *Id.* Thus, the court concluded that the lender's collection claim was not a compulsory counterclaim that needed to be raised in the initial fraud action, and affirmed the lower court's decision to allow the lender to pursue its claim. *Id.* at 1131.

This Court faces circumstances substantively identical to those before the *Douglas* court. Like FRCP 13(a), HRCP 13(a) "shall not abridge, enlarge, or modify the substantive rights of any litigant." *See* HAW. REV. STAT. § 602-11. Like the applicable state law in *Douglas*, Hawaii law affords lenders various judicial and non-judicial remedies for recovering a debt, such as collection actions, judicial foreclosure actions, and non-judicial foreclosure proceedings – each of which remain available to Chase.[6] HRCP 13(a) cannot operate to abridge or modify a lender's contractual or legal rights (or enlarge a borrower's rights, for that matter) by forcing the lender to pursue judicial remedies where it might not otherwise do so. *See Douglas*, 979 F.2d at 1130. Thus, HRCP 13(a) does not require Chase to pursue any of its collection remedies in the State Court Action as compulsory counterclaims.

For this additional reason, Chase's breach of contract claim is not a compulsory counterclaim in the State Court Action. The Motion must be denied.

---

[6] As explained in the Complaint, Chase intends to pursue foreclosure after it prevails in the State Court Lawsuit should Mr. Moniz's debt remain unsatisfied.

## 2. The State Court's October 2, 2012 Order Does Not Preclude Chase From Pursuing Its Breach Of Contract Claim

In the Motion, Mr. Moniz makes much of an October 2, 2012 order issued in the State Court Action which stated that Chase's "Answer and any Counterclaims" were due for filing two days later on October 4, 2012. (*See* Mr. Moniz's Exhibit B). Mr. Moniz argues that the order required Chase to allege all conceivable counterclaims, be they compulsory or permissive, by October 4, 2012. (Motion pg. 5). Mr. Moniz suggests that since Chase did not file a breach of contract counterclaim before October 4, 2012 in the State Court Action, it is forever precluded from pursuing the claim. (Motion pg. 5). Mr. Moniz also attempts to support his assertion by pointing to the State Court's subsequent denial of Chase's motion for leave to file a counterclaim without prejudice.[7]

---

[7] The entirety of Mr. Moniz's argument is premised upon the contents of the State Court's October 2, 2012 order, the contents of a transcript of the hearing on Chase's motion for leave to file a counterclaim, and Mr. Moniz's own declaration testimony regarding the hearing on that motion. (*See* Mr. Moniz's Exhibits B and H; Supplemental Declaration of Stacy Moniz in Support of Motion to Dismiss Complaint).

Mr. Moniz asks this Court to take judicial notice of the order and the transcript. To the extent Mr. Moniz requests that the court take judicial notice of the veracity and/or validity of these documents' contents, Chase objects. *See U.S. v. S. Cal. Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004) ("While the authenticity and existence of a particular order, motion, pleading or judicial proceeding, which is a matter of public record, is judicially noticeable, veracity and validity of its contents (the underlying arguments made by the parties, disputed facts, and conclusions of applicable facts or law) are not.").

To the extent the Motion relies on Mr. Moniz's own declaration testimony, such evidence is not appropriate on a motion to dismiss under Rule 12(b)(6) and it has no relevance to Mr. Moniz's request for dismissal under Rule 12(b)(1). *See Butler v. L.A. County*, 617 F. Supp. 2d 994, 999 (C.D. Cal. 2008) ("On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must limit its review to the four corners of the operative complaint, and may not consider

Mr. Moniz's interpretation of the October 2, 2012 order is inappropriately strained. Nothing in the order suggests that it was intended to abridge Chase's rights under the HRCP by forcing it to allege permissive counterclaims. *See generally* HRCP 13(b) ("A pleading **may** state as a counterclaim any claim against an opposing party not arising out of the transaction or occurrence that is the subject matter of the opposing party's claim."). Mr. Moniz's interpretation is further belied by the fact that the State Court denied Chase's motion for leave to file a counterclaim without prejudice. (*See* Mr. Moniz's Exhibits D and E; Motion pg. 5). In other words, nothing prevents Chase from renewing its request to file a counterclaim in the State Court Action.

The Motion also fails to provide any authority for the proposition that the State Court's October 2, 2012 order has any bearing on this lawsuit. The preclusive effect of state court rulings in federal court proceedings is governed by the federal "full faith and credit" statute. *See generally* 28 U.S.C. § 1738. Section 1738 provides that state judicial proceedings "shall have the same full faith and credit in every court within the United States…as they have by law or usage in the courts of such state from which they are taken." *Id*. In determining whether a state court ruling will be given preclusive effect in federal court, the federal court must apply the preclusion rules of the state court's jurisdiction – in this case, Hawaii. *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 523 (1986).

Under Hawaii law, *res judicata* encompasses two types of preclusion – *res judicata* (claim preclusion) and collateral estoppel (issue preclusion). *See generally Santos v. DOT*, 64 Haw. 648, 651-52 (1982). "The three critical issues in determining whether the principles of *res judicata* and collateral estoppel are applicable are:" (1) was the issue decided in the prior adjudication identical with

facts presented in briefs or extrinsic evidence.").

the one presented in the action in question; (2) was there a final judgment on the merits; and (3) was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?  *Id.* at 653.  Here, the State Court Action has not resulted in a "final judgment on the merits."  As such, Mr. Moniz cannot contend that the October 2, 2012 order is entitled to preclusive effect.

For all of these reasons, Mr. Moniz's speculations regarding the purported preclusive effect of the October 2, 2012 order are baseless.

### 3.     The "First To File" Rule Is Inapplicable

Mr. Moniz next argues that Chase's Complaint should be dismissed pursuant to the "first to file" rule.  (Motion pg. 10).  The "first to file" rule is a "generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district."  *Transamerica Life Ins. Co. v. Jurin*, 2015 U.S. Dist. LEXIS 9349, at *9 (N.D. Cal. Jan. 27, 2015).  However, the rule only applies where two parallel actions are filed in separate ***federal*** courts.  *Id.* at *11.  It does not apply where, as here, one action is pending in state court and another action is pending in federal court.  *Id.*  Thus, Mr. Moniz's argument must be rejected.

### 4.     The "Prior Exclusive Jurisdiction" Doctrine Is Inapplicable

Mr. Moniz also erroneously contends that Chase's breach of contract claim is barred by the "prior exclusive jurisdiction" doctrine.  (Motion pg. 14).  "Under that doctrine, a court may not assert *in rem* or *quasi in rem* jurisdiction where a second court has already asserted such jurisdiction over the same *rem* in a proceeding that is ongoing."  *Hanover Ins. Co. v. Fremont Bank¸* 68 F. Supp. 3d 1085, 1109 (N.D. Cal. 2014).  The doctrine therefore applies only when both actions are *in rem* or *quasi in rem*, and does not apply if either action is *in personam.  See Chapman v. Deutsche Bank Nat'l Trust Co.*, 651 F.3d 1039, 1047

fn. 3 (9th Cir. 2011). In other words, the doctrine applies only "where parallel state and federal proceedings seek to determine interests in specific property as against the whole world (in rem), or where the parties' interests in the property…serve as the basis of the jurisdiction for the parallel proceedings (quasi in rem)." *Id.* at 1044 (internal quotations omitted).

For the prior exclusive jurisdiction doctrine to apply in this case, **both** the State Court Action and this breach of contract action would need to be actions *in rem*. While the Motion argues that the State Court Action is an action *in rem* because it involves a quiet title claim, it does not argue that **this** case is an action *in rem*. (Motion pg. 15). This case involves nothing more than a solitary breach of contract claim for damages. It does not "seek to determine interests in specific property as against the whole world," and so it does not qualify as an action *in rem*. *Id.* The parties' interests in specific property do not serve as the basis of this court's jurisdiction, and so this action does not qualify as a *quasi in rem* action. *Id.* Thus, this case is properly characterized as an action *in personam*, and the prior exclusive jurisdiction doctrine has no application. *See Evans v. American Surplus Underwriters Corp.*, 739 F. Supp. 1526, 1534 (N.D. Ga. 1989) (holding that an action to establish damages for breach of contract is an action *in personam*); *U.S. Bank N.A. v. Ribeiro*, 2012 U.S. Dist. LEXIS 17795, at *3 (D. Nev. Feb. 14, 2012) (holding that a suit seeking "monetary relief, not control or possession of property," is an action *in personam*).

## 5.   Abstention Would Be Inappropriate

The Motion also contends that this Court should abstain from adjudicating this breach of contract action pursuant to the *Younger* and *Colorado River* doctrines. As a general matter, "federal courts are obliged to decide cases within the scope of federal jurisdiction." *Sprint Communs., Inc. v. Jacobs*, 134 S. Ct. 584, 588 (2013). "Abstention is not in order simply because a pending state-court

proceeding involves the same subject matter." *Id.* "Federal courts, it was early and famously said, have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Id.* at 590. Indeed, "[j]urisdiction existing, […] a federal court's obligation to hear and decide a case is virtually unflagging." *Id.* at 591. "Parallel state-court proceedings do not detract from that obligation." *Id.* While it is true that very narrow exceptions to these principles exist, none of the exceptions identified by Mr. Moniz are applicable to the instant case.

### a. Abstention Under The *Younger* Doctrine Would Be Inappropriate

Mr. Moniz first argues that abstention is appropriate under the *Younger* doctrine. (Motion pg. 17). Under the *Younger* doctrine, a federal court may abstain from adjudicating a case in "exceptional circumstances." *Id.* The doctrine only precludes federal intrusion into: (1) ongoing state criminal prosecutions; (2) certain civil enforcement proceedings;[8] and (3) civil proceedings involving certain orders uniquely in furtherance of the state courts' ability to perform their judicial functions.[9] *Id.*

---

[8] The Supreme Court's "decisions applying *Younger* to instances of civil enforcement have generally concerned state proceedings akin to a criminal prosecution in important respects." *Sprint*, 134 S. Ct. at 592 (internal quotations omitted). "Such enforcement actions are characteristically initiated to sanction the federal plaintiff, *i.e.,* the party challenging the state action, for some wrongful act." *Id.* "In cases of this genre, a state actor is routinely a party to the state proceeding and often initiates the action." *Id.* "Investigations are commonly involved, often culminating in the filing of a formal complaint or charges." *Id.*

[9] In enumerating the third "exceptional circumstance" implicating the *Younger* doctrine, *Sprint* cited *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987). In *Pennzoil*, a plaintiff obtained a state court judgment for actual and punitive damages against a defendant, alleging that the defendant tortiously induced a third party to breach a contract for sale of stock to the plaintiff. *Pennzoil*, 481 U.S. at 4. Because it

This case does not fall within any of the three exceptional circumstances implicating the *Younger* doctrine. <u>First</u>, there are no ongoing state criminal prosecutions relating to this case. <u>Second</u>, there are no pending civil enforcement proceedings relating to this case. <u>Third</u>, and finally, in resolving this breach of contract action, this Court will not be entertaining a challenge of "the processes by which [Hawaii] compels compliance with the judgments of its courts." *Pennzoil*, 481 U.S. at 12-14.

In short, this lawsuit, which merely seeks to recover damages resulting from the breach of a promissory note, simply does not involve any of the "exceptional circumstances" warranting application of the *Younger* doctrine. Thus, Mr. Moniz's first abstention argument must be rejected.

### b. Abstention Under The *Colorado River* Doctrine Would Be Inappropriate

Mr. Moniz next contends that abstention under the *Colorado River* doctrine is appropriate, but once again he is mistaken. (Motion pg. 19). "[T]he *Colorado River* exception to the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them is a narrow one." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908, 912 (9th Cir. 1993). In determining whether a

---

lacked resources to post a bond suspending execution of judgment pending appeal, the defendant filed an action in federal district court just before entry of judgment, alleging that the state proceedings violated its constitutional and statutory rights, and sought to enjoin enforcement of the judgment. *Id.* at 4-6. The Supreme Court held that *Younger* doctrine is implicated where a litigant in a pending state court proceeding files a separate federal court proceeding which challenges "the processes by which the State compels compliance with the judgments of its courts." *Id.* at 12-14. The Supreme Court explained that "[n]ot only would federal injunctions in such cases interfere with the executions of state judgments, but they would do so on grounds that challenge the very process by which those judgments were obtained." *Id.*

stay or dismissal under *Colorado River* doctrine is warranted, courts in this Circuit first ask whether there is "substantial doubt as to whether the state proceedings will resolve the federal action." *Id.* at 913. If so, this finding is dispositive and precludes application of the *Colorado River* doctrine. *See id.*; *Holder v. Holder*, 305 F.3d 854, 868 (9th Cir. 2002). Indeed, unless a district court has "full confidence" that a parallel state proceeding will resolve all issues raised in the federal proceeding, the district court cannot stay or dismiss the federal proceeding. *See Intel*, 12 F.3d at 913.

Here, the State Court Action *will not* resolve the issues raised in this case. Neither Chase nor any other party has alleged a breach of contract claim in the State Court Action. For his part, Mr. Moniz's AVC admits or ignores, rather than disputes, the facts that support Chase's instant breach of contract claim.[10] Even if Mr. Moniz *had* disputed these facts, the State Court Action would only resolve the issues in this action *if* the state court eventually issues a judgment invalidating the debt. This type of contingency precludes application of the *Colorado River* doctrine. *See, e.g., id.* *See also* 17A-122 Moore's Fed. Practice – Civil § 122.93(1) ("The existence of a parallel, ongoing state court proceeding is a threshold requirement for *Colorado River* abstention. […] The critical consideration in determining whether federal and state suits are parallel is whether the state litigation will dispose of all claims raised in the federal action. ***Any substantial doubt that the non-federal litigation will completely and promptly resolve the issues between the parties in the federal action precludes abstention on the basis of parallel litigation.*** This is true even if the plaintiff in the federal

---

[10] To reiterate, the AVC: (1) expressly admits that Mr. Moniz executed the Note; (2) does not allege any irregularities in the Note; (3) does not dispute that Mr. Moniz received all proceeds due under the Note; and (4) expressly admits that Mr. Moniz defaulted on his payment obligations. (*See* RJN Exh. 2 ¶¶ 19, 40).

action could have raised the issues in the state court proceeding and chose not to do so." (emphasis added)). As such, Mr. Moniz's *Colorado River* doctrine argument is meritless.

## 6. Application Of The *Rooker-Feldman* Doctrine Would Be Inappropriate

Mr. Moniz argues that this Court should decline to exercise subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine. (Motion pg. 27). "*Rooker-Feldman* prohibits a federal district court from exercising subject matter jurisdiction over a suit that is a de facto appeal from a state court judgment." *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1139 (9th Cir. 2004). "*Rooker-Feldman* thus applies *only* when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment." *Id.* at 1140 (emphasis added). Here, Chase does not assert as its injury "legal error or errors by the state court," nor does it seek as its remedy relief from a "state court judgment." Rather, Chase is seeking redress of a legal injury caused by Mr. Moniz and seeks damages as its remedy. *Cf. id.* Thus, *Rooker-Feldman* doctrine has no application and Mr. Moniz's argument must be rejected.

## 7. Hawaii Revised Statutes Sections 501-1 and 501-2 Have No Bearing On This Dispute

Finally, the Motion vaguely contends that Hawaii Revised Statutes sections 501-1 and 501-52[11] mandate dismissal of this case. (Motion pgs. 7-8). The Motion never provides any support for this assertion. Section 501-1 is the statute that created the Land Court of the State of Hawaii ("Land Court"). Section 501-1 provides, in part:

---

[11] The Motion mistakenly refers to section "501-2," but block-quoted text appearing in the Motion comes from section 501-52. (Motion pg. 8).

> [The Land Court shall have] exclusive original
> jurisdiction of all applications for the registration of title
> to land and easements or rights in land held and
> possessed in fee simple within the State, with power to
> hear and determine all questions arising upon such
> applications, and also have jurisdiction over such other
> questions as may come before it under this chapter,
> subject to the rights of appeal under this chapter.  The
> proceedings upon the applications shall be proceedings in
> rem against the land, and the decrees shall operate
> directly on the land and vest and establish title thereto.

HAW. REV. STAT. § 501-1.  Meanwhile, section 501-52 provides:

> The [Land Court] may make and award all such
> judgments, decrees, orders, and mandates, issue all such
> executions, writs of possession, and other processes, and
> take all other steps necessary for the promotion of justice
> in matters pending before it, and to carry into full effect
> all powers which are, or may be given to it by law.

HAW. REV. STAT. § 501-52.  It is completely unclear how these statutes pertaining to the creation and powers of the Land Court relate to these proceedings.  The State Court Action is not pending in the Land Court; it is pending in the First Circuit Court of the State of Hawaii.  (RJN Exh. B).  *See In re Campbell*, 34 Haw. 10, 11 (1936) (recognizing that the Land Court "is a tribunal separate and distinct from the circuit court").  Thus, insofar as any of Mr. Moniz's arguments rely on sections 501-1 or 501-52, they are misguided.

///

///

///

///

///

# V. CONCLUSION

The grounds asserted by Mr. Moniz for dismissal of Chase's simple breach of contract claim are without merit and contrary to applicable law. For all of the foregoing reasons, Mr. Moniz's Motion should be denied.

DATED: San Francisco, California, February 12, 2016.

BEN SUTER
Keesal, Young & Logan, LLP
Attorneys for Plaintiff
JPMorgan Chase Bank, N.A.

## **WORD LIMITATION CERTIFICATION**

The undersigned counsel hereby certifies that the above Memorandum complies with the word limitation set forth in Local Rule 7.5.  The font used in the Memorandum is size 14 Times New Roman.  The Memorandum contains 7,163 words.

DATED:  San Francisco, California, February 12, 2016.

BEN SUTER
Keesal, Young & Logan, LLP
Attorneys for Plaintiff
JPMorgan Chase Bank, N.A.